The facts in this case are fully stated in the opinion of the Court, which was drawn up by
Appleton, C„ J.'
By R. S., 1857, c. 24, it is made the duty of the overseers of the poor "to relieve persons destitute found in their towns,” &c. This provision is general. The obligation rests upon the municipal officers to relieve all so found destitute, and it is immaterial how such destitution may have arisen.
Daniel Starkie, a resident of Yeazie, enlisted as a volunteer in one of the ten regiments raised under the Act of 1861, c. 63, and, while in the service of the United States, his wife, standing in need of assistance, applied to its municipal officers for such assistance, which they afforded, and of which they gave notice to the defendant town, where said Starkie had his settlement. This suit is brought to recover payment for the supplies thus furnished.
*519 If the wife and family were " destitute” within the meaning of the general pauper law of the State, c. 24, the plaintiffs are entitled to recover, unless Starkie, being a volunteer under the Act of 1861, c. 63, authorizing the raising of ten regiments, is by its provisions exempted from the disabilities attached by the general law to pauperism.
By the Act of April 25, 1861, c. 63, § 6, it is enacted that, "whereas many of our citizens, who'have families, are ready, at the call of the country, to volunteer their services in its defence, and it is not only the duty but the pleasure of their fellow citizens, who are left at home, as a suitable compensation for their patriotic services, to provide for the support of their families in their absence, therefore, cities and towns are hereby authorized and empowered to make proper provision for the support of the families of any persons, having their residence in such cities and towns, who may enlist by virtue of this Act, during their absence from the State and tvhose families may stand in need of assistance. JSTo disabilities of any hind, whatever, shall be created by reason of aid so furnished and received.”
By the general pauper law, cities and towns were required to relieve "persons destitute.” This Act, c. 63, was not needed to impose that obligation upon them. If the destitution was not such as to bring the supplies furnished Starkie’s family within its provisions, the plaintiffs cannot maintain this suit, because their case is not within the statute under and through which they seek to recover.
If the destitution was such as would require assistance to be furnished under the pauper law of 1857, e.’ 57, then the inquiry arises as to the effect of the Act of 1861, o. 63, § 6.
It is very obvious, that if supplies are "furnished and received” under the provisions of § 6, before referred to, that the town furnishing them cannot recover for the amount so furnished of the town in which the person receiving had his settlement. If they could, then it is difficult to perceive what effect is to be given to this section. If they could, • then it amounts only to -an unnecessary and illusory re-en *520 actment of the general pauper law, and no rights would be acquired and no disabilities prevented.
It may be assumed as conceded, that, cities and towns may as a "duty” provide for the support of the families of resident volunteers under the Act of 1861, — which provision the latter receive " as a suitable compensation for their patriotic services,?’ — and that this may be done without their being entitled to recover of the towns where the families of the persons furnished had their respective settlements.
The question then occurs, can cities and towns refuse to furnish supplies to the families of resident volunteers having their settlement elsewhere, or, furnishing them, can they recover of the cities and towns where such settlements may be the amount so furnished ?
It is clear they cannot rightfully refuse to furnish Suppliés to persons destitute under the general law. And the families of soldiers are as much entitled to relief under its provisions as the families of those not soldiers. Because of "their patriotic services,” their families, if destitute, are not to be deprived of the assistance necessary to relieve their destitution.
The cities and towns of the State being obliged by the general law to relieve destitution, and being." authorized and empowered,” by c. 63, § 6, to provide for the support "of the families of any persons having their residence in such cities and towns, who may enlist by virtue of this Act, and whose families may stand in need of assistance” — and it being provided that "no disabilities of any kind, whatever, shall' be created by reason of aid so furnished and received,” can they or their officers so furnish relief, that it shall be at their option, or that of their officers, whether the disabilities of pauperism shall or shall not attach to the families so relieved P
To determine this it will be necessary to consider the object and purpose of the Legislature in passing the Act, as well as the peculiar language of the Act itself.
The language of this section is general. It applies to all *521 cities and towns, as well as to all volunteers who have enlisted under its provisions. It asserts it to be the duty of those at home to provide for the families of those in the field, whenever they "may stand in need of assistance,” and that such provision is but " a suitable compensation for their services.” It is clearly specified by whom and for whom this provision is to be made. Nor is this all. Cities and towns are empowered and authorized to mate this provision, and when made, it is enacted that" no disability of any kind, whatever, shall be created by reason of aid so furnished and received.” All this specially applies to volunteers under the Act of 1861, c. 63. All this was unnecessary and idle legislation, if no effect is to be given to the last clause of § 6; for without any legislation it was the duty of cities and towns to provide for the support of persons destitute, and it was not for them or their officers to inquire how or by whose fault or act the need for such support may have arisen.
It was a duty for cities and towns to provide for- the support of the families of absent volunteers, when standing in need of assistance, and if such provision was a "suitable compensation for their patriotic services,” most assuredly, they, when enlisting, could never have imagined that the performance of this duty would consist in imposing on them the disabilities of pauperism, nor that the compensation so liberally tendered would terminate in making their families paupers. Neither would they have imagined that it was optional with the cities and towns, whether the duty should be performed or this compensation rendered.
By § 6 the receiving of support was to create no disabilities. But pauperism creates disabilities. It separates families. It takes children from the paternal roof and removes them from the paternal control. It disfranchises the father. If the supplies furnished authorize the plaintiffs to recover, then have grievous disabilities boon imposed upon the volunteer soldier, where he was told none should be created. -
By the general pauper law of 1857, c. 24, cities and *522 towns were required to relieve "persons destitute.” By it, they were required to relieve the families of soldiers, whenever they should fall within the category of persons destitute. No statute was needed either to oblige or to authorize and empower them to do this. It was their duty without and before this Act to relieve the families of destitute soldiers. It was the duty of town officers to relieve destitute persons within the precincts of their town. The sixth section of this Act was not necessary to impose that duty upon them. Why, then, was it enacted? If this section had not been enacted, it was the duty of cities and towns, as much before as after its passage, "to provide for the support” of the families of those, who "may stand in need of assistance,” — whether of soldiers or not. But, before this enactment, cities and towns could not relieve " persons destitute;” without imposing, upon those so aided, the disabilities of pauperism. They could relieve, but those so relieved were paupers by the general law on the subject. This the Legislature designed to prevent, so far as relates to supplies furnished for the relief of the families of volunteers under the ten regiment Act. To that end, they imposed upon cities and towns the duty of relieving them — they made that relief, so afforded, a "suitable compensation for their patriotic services,” and, in language the meaning of which cannot be doubted, enacted that "mo disabilities of any hind, whatever, shall be created' by reason of the aid so famished and received.”
But it is argued that this section is not mandatory. While it is conceded that cities and towns may so relieve the families of volunteer soldiers as not to impose the disabilities of pauperism upon those so relieved, it is insisted that it is at their option so to do or not. The section is general. It is declared to be the "duty” of cities and towns to provide for the support of their families, when they may "stand in need of assistance.” But is the fulfillment of this duty a matter of discretion ? Can cities or towns escape at their own will and pleasure the performance of a duty, by simply *523 passing a vote to that effect. The supplies furnished on the part of the cities and towns are but a " suitable compensation” to the volunteer soldiers "for their patriotic services.” Can cities or towns grant or withhold them as they may choose ? Can one town make a soldier a pauper by relieving his family, and another so be relieved under the same act that he shall not be one ? Are the duties of towns and their officers to be determined by this section, or are they variable with every corporate locality ?
The statute nowhere implies, much less authorizes, any discrimination on the part of towns in the giving or the withholding this aid. The giving it is required by the general law. This section (§6) does not sanction one rule for the plaintiff, and a different one for the defendant town. Still less does it sanction different rules for the inhabitants of the same town' — as that they may relieve one soldier as a pauper, and another without his incurring the disabilities of pauperism. Yet that very attempt is made in the case before us. The families of resident soldiers, having a settlement, were to be supplied under § 6, without disfranchisement, while those of resident volunteers, having a settlement elsewhere, were to be aided under the general pauper law, and thus be liable to all its disabilities.
The aid "furnished and received” the same, — coming from the same source — the funds of the town, — raised in the same mode — taxation,— disbursed for the same purpose —the relief of the families of soldiers in need of assistance, — received by them to relieve that need, — how or where is conferred the authority on cities and towns to determine according to whim or caprice whether these disabilities shall be incurred or not ?
But if relief may be rendered without imposing disabilities upon its recipients, where is to be found the authority to render it in such a manner as to create them ? What the form — what the mode to designate whether the relief is to have one effect or the other ? Who is to discriminate and determine when the relief rendered shall create and when it *524 shall not create disabilities ? Is it for cities and towns ? By what words is this right of discrimination given ? Is it for municipal officers to determine ? By what language is* this right of determination conferred upon them ? If there be no right of discrimination conferred, either in terms, or by implication, upon cities, towns or municipal officers, then any aid makes the families of all volunteers receiving it paupers, or none. But the statute expressly enacts that no disabilities shall be created — and consequently no persons receiving aid under and by virtue of the authority conferred by § 6, and under its provisions, can be made paupers.
Why should such power of discrimination exist? Are not all soldiers alike and equally entitled to the "suitable compensation” provided for their families ? Did any volunteerrenlisting suppose that a distinction would be made between him and his companion in arms — that he would be disfranchised and his fellow remain freed from disabilities— the circumstances in each case the same? Could those, who enlisted for one common purpose, imagine that they were at the mercy of their respective towns — that one town would aid their families so as not to expose them to the degradation of pauperism and that another would refuse so to do— and that both would act legally and rightfully in so doing— nay, more — that these diverse and contrarient principles would be adopted in the same town — that relief would be so afforded as not to create disabilities to those of its inhabitants in the- service who had their settlement in town— and denied to those having their settlement elsewhere — so that, in the same town, one soldier, after the expiration of his enlistment, returns to his home, while another returns to find that in his absence he has been made homeless — that his children have been taken from his control, that his wife is in the poor house, and he is a pauper — and that this is to be the "suitable compensation for his patriotic service,” which the Legislature intended by the Act under consideration?
It will be conceded that relief may be so tendered, under *525 § 6, as that no disabilities shall attach. If not so, the section would be worse than idle — it would be a fraud. If so, then the municipal officers may relieve, and there will be no loss of status. But if the relief be under § 6, and not under the general pauper law, it is clear that the town relieving cannot recover of the town where the family of the volunteer receiving relief has his settlement, — for the expenses incurred. When the town relieves as a duty, and-the family of the soldier receives as a compensation for services, the town so relieving cannot, by suit or otherwise, obtain remuneration for its advances.
But the plaintiffs claim that any town may relieve the families of volunteers, resident but not having a settlement therein, with the rights of recovery against the town where the settlement of the soldier, whoso family has been relieved, may be. If so, then a town relieving the families of all its soldiers may be subjected to the expense of relieving those resident, and not having a settlement there, as well as of those having a settlement there but residing in towns which make provision for them under the pauper act. The consequence will be that all towns relieving under § 6 will be exposed to more than their fair liability. If China supplies the families of all its resident volunteers, without reference to where their settlement may be, it is all that can reasonably be required. But if this suit is maintained it may bo compelled to support not merely the families of all its resident volunteers when destitute, but those of volunteers resident in other towns and having their settlement in China.
Now if such be the law, no city or town could safely or wisely relievo the families of all its resident volunteers under § 6, because, as in the very instance before us, it may be made liable for the families of its inhabitants having -a settlement elsewhere, as well as for those of the residents of other towns, but having a settlement in it. No town could therefore safely relieve, except by imposing pauper disabilities upon those relieved, — if there be two ways of relieving — with different and opposite legal consequences. *526 If so, then the whole section is a sham and a cheat. The duty is evaded. The promised compensation is withheld. If, under § 6, one town may relieve the families of resident volunteers having a residence elsewhere without receiving remuneration from the town where such settlement may be, and another may relieve and receive such compensation — it is apparent that the section will be of no avail, — for all will so relieve as to recover compensation, as far as may be, for the expenses incurred in furnishing the relief needed. The consequence may be, that the families of volunteers, who have a settlement in the place of their residence, will escape disability, and those not having such settlement will incur them. But such was not the intention of the Legislature, whose purpose it was to treat all alike.
The word may in a statute is to be construed must or shall when the public right or interests are concerned, and the public, or thii’d persons, have a claim de jure that the power be exercised. Blake v. Portsmouth & Concord Railroad, 39 N. H., 435. When a public body is clothed with power and furnished with means to do an act required by the public interest, the execution of such power may be insisted on as a duty, though the statute conferring it be only permissive in its terms. Mayor of New York v. Furze, 3 Hill, 612. What a public corporation or officer is empowered to do for others, and it is beneficial to them to have' done, the law holds it should be done. Mason v. Fearson, 9 How., (U. S.,) 248. When the law imposes a duty upon individuals or corporations, its performance or non-performance is never a matter of discretion on the part of those upon whom the duty is devolved. Though the language of a statute is simply enabling, yet if it confers a power which concerns the public as well.as individuals, it is not merely permissible, but it is mandatory. People v. Supervisors of New York, 11 Abbott, 114. In the case before us, it is specially declared to be the duty of cities and tqwns to provide for the support of the families of resident volunteers, "in their absence,” whenever they may "stand in need of *527 assistance.” It is equally a matter of deep public interest, as well as of private right, that this be done — and when done the statute prohibits the creation of disabilities as a consequence of receiving supplies thus furnished.
The general power to relieve distress existed without any new enactment. It authorized relief to the families of soldiers as to those of others. The duty to relievo existed. Cities and towns were bound as much before, as after the passage of § 6, to relieve the families of volunteer soldiers resident in their town and needing assistance. But they could not do so without imposing disabilities. Hence cities and towns were authorized and empowered to relieve the families of resident volunteer soldiers — and so that "no disabilities of any kind, whatever,” should be created "by reason of any aid so furnished and received.” The cities and towns of the State have no election. Municipal officers have no option. No soldier and no family of a soldier, while in the service of the United States, can be made a pauper by reason of any aid furnished by the town, of which he was a resident at the time of his enlistment, — to his family— standing in need of assistance. This relief, thus rendered by the city or town in which the soldier resides, gives no right of recovery over against the town where his settlement may be, if other than his place of residence. It is aid under this act and not under the general pauper law.

Plaintiff nonsuit.

Cutting, Walton and Danforth, JJ., concurred.