THE STATE, LEWIS READ, JR., PROSECUTOR, v. ATLANTIC CITY ET AL.

1. Atlantic City passed two ordinances, under which it entered into a contract with a company organized under the " Act for the construction, maintenance and operation of water works, for the purpose of supplying cities, towns and villages of the state with water," approved April 21st, 1876. . *Rev.*, p. 1365. The city was thereby to pay a specified sum for water for certain public purposes, for an indefinite period. An information was filed in the name of the attorney-general to set aside the proceedings for fraud. Before a judicial determination of that suit the ordinances were repealed. The company completed their works, but took no steps to enforce the contract for some time. When the company brought an action against the city upon the contract, prosecutor, a taxpayer in the city, applied for a *certiorari*, which was allowed. *Held*, that neither the city nor a taxpayer was estopped from contesting the authority of the city to take the proceedings in question, and that the writ was properly allowed, if applied for within a reason-

Read v. Atlantic City.

able time after it had become apparent that by the proceedings a burden might be imposed on taxpayers.

2. By the law governing the city it was enacted that the debt of the city should never exceed $35,000. When the proceedings in question were taken, the city debt at least equaled that sum, and no provision was made to raise, by taxation, the amounts the city could be called on thereby to pay. *Held*, that the obligation thus incurred by the city was within the meaning of the provision limiting the city debt, and was prohibited thereby.

*Certiorari* bringing up proceedings of Atlantic City and a contract between said city and the Atlantic City Water Works Company. The facts appear in the opinion.

Argued at February Term, 1887, before Justices. VAN SYCKEL, MAGIE and PARKER.

For the prosecutor, *Wm. E. Potter*.

For the defendants, *S. H. Grey* and *P. L. Voorhees*.

The opinion of the court was delivered by

MAGIE, J. Two ordinances of Atlantic City have been brought here by this writ.

The first, entitled "An ordinance to provide a supply of water for Atlantic City," was approved October 21st, 1880. It purported to give authority to J. M. W. and others, or to such company as they might form under the laws of New Jersey, to lay pipes in the highways to conduct water to various parts of the city. The grant was upon conditions, one of which required the grantees to furnish water to the city in various ways. The ordinance contained an agreement on the part of the city to pay the grantees, on the performance of the conditions, the annual sum of $50 for each hydrant placed as thereby required. The grant was declared to be subject to the act entitled "An act for the construction, maintenance and operation of water works, for the purpose of supplying cities, towns and villages of the state with water," approved April 21st, 1876. *Rev., p.* 1365.

The other ordinance was supplemental to, and amendatory of the former, and was approved November 19th, 1880. By its provisions the grant was made to enure to the benefit of the Atlantic City Water Works Company. The number of hydrants to be placed and paid for was thereby largely increased, and it was provided that the property and franchises of the company were to be exempted from municipal taxation.

By the terms of these ordinances articles of agreement were to be executed between the city and the company, and the return shows such articles, dated November 23d, 1880, whereby the company accepted the grants on the conditions contained in the ordinances, and the city covenanted to perform the stipulations made therein on its part.

The case shows that on October 25th, 1880, J. M. W. and others filed, in the office of the secretary of state, articles of association, for the purpose of becoming incorporated under the above-mentioned act of April 21st, 1876, by the name of the Atlantic City Water Works Company. The existence of the company was therein fixed at ninety-nine years. To these articles was appended the ordinance of October 21st, 1880, with the apparent design of conforming to the requirements of sections 2 and 3 of said act. Whether the ordinances and contract fix any limit to the mutual obligations of the parties has been questioned. It is sufficient for the purposes of this case to say that they may continue for the corporate existence of the company.

When the cause was moved, defendants objected to the consideration of the reasons on the ground that prosecutor's delay in suing out this writ had barred him from this relief. They showed by affidavits that the company (which was one of the defendants) had expended large sums in the erection of their works, and had performed the contract on their part so far as permitted. They moved to dismiss the *certiorari* as improvidently granted. Counsel were heard on this motion and also on the merits.

In considering the objection urged on the ground of prosecutor's laches, the following facts are to be taken into account:

The ordinances were passed and the contract was made in 1880. The *certiorari* was allowed June 23d, 1886. On March 18th, 1881, an information was filed in the Court of Chancery in the name of the attorney-general, on the relation of prosecutor and others against the company and others, for the purpose of setting aside the ordinances and contract on the ground of fraud. That proceeding was pending until July 17th, 1885, when the information was dismissed. On May 24th, 1882, both ordinances were repealed.

The works were constructed and the water turned on June 19th, 1882. Notwithstanding the city repudiated its obligations, no step to enforce them was taken by the company until August 6th, 1885, when it brought an action against the city to recover the payments called for by the contract. A demurrer was interposed to the declaration, but being overruled, leave to plead was obtained. Before plea filed under such leave, this writ was applied for and allowed. Since allowance it seems to have been prosecuted with reasonable diligence.

The question presented, therefore, is whether under these circumstances the writ ought to have been allowed. If it ought not to have been allowed, it must now be dismissed.

It has not been contended that the allowance of the writ was prohibited by any statute. The contention is that the facts bring the application for this writ within principles which, in our practice, require its denial.

In determining this question, the grounds on which prosecutor attacks the proceedings are to be taken into account. The main ground is that the city lacked power to take these proceedings. He stands, not on mere irregularities, but on a substantial objection. His claim is that he, as a tax-payer, is to be burdened by obligations of the city entered into without authority. There are cases in this court and in the Court of Errors, permitting a review by *certiorari* of municipal proceedings which have imposed a burden on citizens, on their application within a reasonable time after it became certain they were to be thus burdened. *State, Doyle, pros.,* v. *Newark,* 1 *Vroom* 303 ; *State, Ogden, pros.,* v. *Hudson,* 5 *Dutcher* 475.

But it must be considered as completely settled in this state, that when the proceedings of a municipal corporation have contemplated and resulted in the expenditure of public money, objections, even when founded on lack of authority, must be made promptly. An application to review such proceedings by *certiorari* must be made within a reasonable time, or it must be denied. *State* v. *Hudson City*, 5 *Dutcher* 115; *State* v. *Water Commissioners*, 1 *Vroom* 247; *State, Hampson, pros.*, v. *Paterson*, 7 *Vroom* 159; *State, Wilkinson, pros.*, v. *Trenton*, 7 *Vroom* 499; *State, Spear, pros.*, v. *Perth Amboy*, 9 *Vroom* 425. The same principle has been applied to cases where money has been expended in enterprises of a *quasi* public nature, and where, under cover of a proceeding of a public nature, individuals have been led to expend money. *Haines* v. *Campion*, 3 *Harr.* 49; *State, Britton, pros.*, v. *Blake*, 6 *Vroom* 208; *Bowne* v. *Logan*, 14 *Vroom* 421.

The case in hand presents no feature requiring the application of these principles. There has been no expenditure of public money, and none was contemplated. The enterprise, though of public utility, has yet nothing of a public or even *quasi* public nature. The company with which the contract was made was a private corporation, organized and investing its capital for purposes of gain. The contract with the city relates to a supply of water for public purposes, but it differs in no respect from any contract the company might make with a private individual for the supply of water at a specified price. The company expended its money in erecting its works, in the expectation of reaping a reward through the compensation it should receive for supplying water, under this and other similar contracts. But it had no right to rely on this contract if the city had no authority to make it. Whoever deals with a corporation is in general presumed to know the extent of its powers. It is true that corporations may be estopped from setting up the defence of *ultra vires* against their obligations. Thus, when a municipal corporation had power to borrow money if certain facts existed, and the legislature had manifested an intention to invest certain officials or agents

with authority to determine the existence of such facts, and they have solemnly asserted their existence, the corporation has been held to be estopped from contesting its obligations when in the hands of those who loaned thereon in good faith and without knowledge of the lack of power, on the ground that the facts did not exist. *Mutual Benefit Life Ins. Co.* v. *Elizabeth*, 13 *Vroom* 235. But no such estoppel can be claimed in this case.

Nor can such an estoppel be claimed in view of the fact that the effective objection to these proceedings is (as will be seen) that thereby the city is burdened with a liability in excess of the limit fixed by its charter. After that limit of indebtedness has been reached, the city's power to incur debts has ceased or been suspended. Whether or not that limit has been reached is a fact on which the subsequent authority depends. But there is nothing in the legislation affecting the city indicating an intent to clothe its officers with authority to determine whether or not the limit has been reached. If there did appear such a legislative intent, it is obvious that the restriction to a fixed limit would be futile, if the mere act of the city officers in incurring additional indebtedness is to be accepted as an assertion that the limit had not been reached, and an estoppel on the city from contesting that fact. Where bonds issued by a city, in excess of the limit of indebtedness prescribed by the constitution, made no mention, directly or indirectly, of the amount of the city's indebtedness, it was held by the Supreme Court of the United States that even a *bona fide* holder of them could not recover thereon. Whether, if the bonds had contained recitals which could be interpreted as assertions by the municipal authorities that the bonds, with the city's previous indebtedness, did not exceed the constitutional limit, the city would have been estopped from contesting them, was left an open question, and the case was carefully distinguished from the many cases in the federal courts which have established doctrines similar to those enunciated in *Mutual Benefit Life Ins. Co.* v. *Elizabeth, ubi supra;* *Buchanan* v. *Litchfield*, 102 *U. S.* 278. A similar view has

been elsewhere taken. *Law* v. *People*, 87 *Ill.* 385 ; *French* v. *Burlington*, 42 *Iowa* 614 ; *McPherson* v. *Foster*, 43 *Iowa* 48.

There is nothing, therefore, to prevent the city, or prosecutor as a citizen, from contesting the validity of these corporate acts, unless it be his own supineness. But the case shows that immediately upon the passage of the ordinances he, with others, attacked them. Before the propriety of that attack had been judicially determined, the ordinances were repealed. This apparent repudiation of its obligations by the city might well be deemed to be acquiesced in by the company so long as it did not attempt to enforce the obligations. When its suit against the city with that object had been begun, and the demurrer to the declaration had been overruled, then it became apparent that unless the ordinances and proceedings were directly attacked the city might be held liable thereunder, and in that event prosecutor would be affected. He applied for the *certiorari* within a reasonable time thereafter, and for the reasons above given I think it was properly allowed, and should not now be dismissed.

This conclusion makes it necessary to consider such of the reasons assigned for setting aside these proceedings as were relied on in the argument.

One of the reasons assails the ordinances on the ground that the act of April 21st, 1876, above referred to, on which they depend, is unconstitutional because it creates a monopoly.

In *Davis* v. *Harrison*, 17 *Vroom* 79, this act was attacked as unconstitutional because limited in its scope to certain localities, and so in contravention of the prohibition against granting corporate powers or regulating the internal affairs of municipalities by any but general laws. No opinion was expressed on the point, for the case was decided on other grounds.

A similar objection might have been urged in this case, if, by the true construction of the act, exclusive privileges or franchises are created, for they can only be granted by general laws. Such a construction seems to have been given to this act by the Chancellor in a case arising upon these proceedings. *Atlantic City Water Works* v. *Atlantic City*, 12 *Stew. Eq.* 367.

But neither of these points has been directly presented in the argument, and I deem it, therefore, obviously improper to attempt a determination of a question of such moment to municipalities which have acted under this legislation, and to corporations formed thereunder.

The reasons relied on assert, in various modes, the invalidity of the proceedings on the part of the city as *ultra vires*.

It is first insisted that the city had no power to contract for a supply of water for a longer period than one year.

The power possessed by the city in this respect was conferred by its charter. The ordinances in question were passed before the act approved March 15th, 1881 (*Pamph. L.*, p. 118), which authorizes any municipality to contract for a supply of water by any water company for a term not exceeding ten years, had become a law.

By its charter (*Pamph. L.* 1866, p. 314), Atlantic City was empowered to provide, by ordinance, "for a supply of water for said city." The grant of this power was contained in section 7, whereby all the corporate powers of the city were in like manner granted. By section 8 authority was given to the common council to raise, by tax, "from year to year," such sums "as they shall deem expedient" for defraying the expenses of (among other things) "supplying said city with water."

Similar provisions were before the court in *Davis* v. *Harrison, ubi supra.* Their interpretation was not required for the determination of that case. Some intimation was, however, given of the view taken by me of their proper construction. I am not at liberty to follow that view, because the clauses of this charter have been construed in this court to authorize the city, by one common council, to make a contract for a supply of water extending beyond the period for which that council could raise taxes. *Atlantic City Water Works Co.* v. *Atlantic City,* 19 *Vroom* 378. This construction will, of course, be adopted in this case on this authority, and the reasons whereon this objection has been urged are thus disposed of.

It is next urged that the ordinances in question lack validity,. because they increase the obligations of the city beyond $35,000.

By a proviso to section 8 of the original charter of the city, it was enacted that "said city shall not owe over $20,000 at any one time." This limit was changed by a supplement,. approved April 8th, 1875 (*Pamph. L., p.* 518), whereby it was provided that "the debt of Atlantic City shall at no time exceed the sum of $35,000."

The case shows that when these ordinances passed, the debt of the city was at least $35,000. It also appears that no· steps had been then taken, and none have since been taken, to· raise by taxation any moneys to be applied to meet the liability of the city under this contract.

The question, then, is whether, under these circumstances, the obligation which the city assumed, by passing these ordi-- nances and entering into this contract, is within the meaning· of the restrictive clause limiting the debt of the city. If it is, the action of the city was *ultra vires.*

Although limitations on municipal indebtedness are common. in our legislation, I do not find that our courts have been called on to determine what kind of municipal obligations are· affected thereby. Elsewhere the question has been frequently considered, and especially in states wherein the limit of muni- cipal indebtedness has been fixed by constitutional enactment.

In Iowa the constitution prohibits municipal corporations. from incurring indebtedness in any manner, or for any pur- pose, to an amount exceeding certain limits.

It has been there held that the word "indebtedness," in this. clause of their constitution, is not to be limited to debts evi- denced by bond, or those which are due simply. The true· interpretation of the rule of limitation was said to be that "where the contract made by the municipal corporation per- tains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues, and such special taxes as it may legally, and in good faith, intend to· levy therefor, such contract does not constitute the 'incur-- ring of indebtedness' within the constitutional prohibition."

Upon that interpretation it was held that a contract to purchase property, or to erect buildings, when the liability so created exceeded the limit, would be prohibited, but that a contract to rent a building, and to pay, at fixed periods, a reasonable rent therefor, not exceeding the ordinary current revenues at such periods, was not prohibited. *Grant* v. *Davenport,* 36 *Iowa* 396. See, also, *French* v. *Burlington,* 42 *Iowa* 614.

The Indiana constitution contains a similar clause. The word "indebtedness" was there construed to cover any agreement by a municipal corporation to pay money when no suitable provision has been made for the prompt discharge of the obligation, and so it was held that a city was prohibited from issuing an order on its treasury even for current expenses when there were no funds applicable to its payment. *Sackett* v. *New Albany,* 88 *Ind.* 473. In a later case, involving the question now before us, it was held that the constitutional prohibition did not apply to a contract by a municipal corporation to pay for a supply of water as it should be furnished, provided the contract price could be paid from the current revenues as the water should be furnished without increasing the corporate indebtedness beyond the constitutional limit or encroaching on funds set apart for other purposes. *Valparaiso* v. *Gardner,* 97 *Ind.* 1.

It is to be observed that in these cases contracts substantially like that before us have been held not to be within the prohibition against an increase of indebtedness, not on the ground that a contingent liability was not within the language of the limitation, but on the ground that it appeared that the liability as it arose would be met by what is called "current revenues." It does not appear from the cases how such revenues are raised in those states, whether by the provisions of some fixed law, or (as in the case before us) by the judgment as to the expediency of taxation, by an annually elected body representing the people of the municipality.

The Illinois constitution contains a provision like that of Iowa.

This provision has been held to prohibit a debt payable in

the future, or on the rendering of service, or on the delivery of property, as well as a debt payable presently and absolutely. On that subject the court says : " If a contract or undertaking contemplate in any contingency a liability to pay, when the contingency occurs, the liability is absolute ; the debt exists, and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred." *Springfield* v. *Edwards*, 84 *Ill.* 626. And the courts of that state have gone so far as to hold that a municipal corporation was prohibited from incurring even temporary liabilities for current expenses and not exceeding the amount of the current tax levy. *Springfield* v. *Edwards, supra ; Law* v. *People*, 87 *Ill.* 385 ; *Fuller* v. *Chicago*, 89 *Ill.* 282 ; *Fuller* v. *Heath*, 89 *Ill.* 297.

It is not easy to reconcile the doctrine of these cases with a later case, in which it was held that the contract of a municipal corporation to take gas at a specified yearly price, for a period of thirty years, was not prohibited, when the yearly price was not in excess of the limits of indebtedness, although the price for the whole term was largely in excess of that limit. *East St. Louis* v. *East St. Louis Gaslight, &c., Co.*, 98 *Ill.* 415.

But that case, if not explainable on account of the particular circumstances, must be considered to have been overruled by a still later case, in which the doctrine was reiterated that the constitution prohibited an indebtedness exceeding the limit even when incurred for necessary current expenses, and in which a contract for a supply of water, to be paid for from time to time over a period of years, substantially like that now before us, was held to be invalid because within the constitutional prohibition. *Prince* v. *Quincy*, 105 *Ill.* 138 ; *S. C.*, 105 *Ill.* 215.

The constitution of Pennsylvania provides that the debt of any city shall never exceed a fixed limit.

The city of Erie, after its debt had reached that limit, made a contract for the erection of a market-house for the use of the city, for which the city was to pay the owner an annual rent calculated at six per cent. on the cost of the building and the

value of the land, for a period of twenty-five years, during which the city had liberty to purchase the property. This contract was held to create a debt within the meaning of the constitutional prohibition. *Erie's Appeal*, 91 *Penna. St.* 398.

Where the prohibition against an indebtedness beyond a certain amount is contained in the municipal charter, contracts raising a liability upon the performance of some act in the future have been held to be within the prohibition. *Wallace* v. *San Jose*, 29 *Cal.* 180; *Niles* v. *Niles*, 11 *Am. & Eng. Corp. Cas.* 299.

It is impossible, perhaps, to entirely reconcile these cases. The true interpretation of such restrictions on municipal indebtedness, in my judgment, lies between the extremes they exhibit.

The plain object of such restrictions is to require that all moneys which are to be paid for municipal expenses, after the debt has reached the fixed limit, shall be raised by taxation.

In view of this object, it is clear (and all the cases agree in this) that prohibitions against increasing the indebtedness, or the debt, of a municipality are not to be construed as limited to obligations which are debts *eo nomine*, but are to be extended to all contracts for the payment of money or contracts whereon the payment of money may be enforced. But where the money to be paid upon such contracts is provided for to be raised by taxation under some fixed and definite scheme, such contracts are not, in my judgment, within such prohibitions. Where, however, the money required to meet such contracts is not provided for, either by being legally ordered to be raised by taxation and appropriated for that purpose, or by some legislative scheme which positively prescribes that it shall be raised by taxation and appropriated for its payment as needed, then such contracts do increase the indebtedness or debt of municipal corporations within the meaning of such prohibitions. Any other construction would deprive these restrictions of the force requisite to reach and cure the evil intended to be prevented thereby.

In the case before us it appears that no provision has been made to raise, by taxation, the money to be paid under the ordinances and contract. Nor is there any legislation positively and directly prescribing that such money shall be so raised. When the legislature empowered municipalities, by the act of 1881, above referred to, to contract with water companies for a term of years, it expressly required that the annual payments to be made should annually be raised by taxation. Whether such sums should be raised was not left to the judgment of the municipal authorities. For the reasons above given, I am of opinion that contracts made under that act would not increase the indebtedness of a municipality within the meaning of such a restrictive clause, but, for like reasons, I am compelled to the conclusion that the obligations undertaken by Atlantic City, by the ordinances and contract before us, did increase its debt within the meaning of the supplement to its charter above referred to.

Defendants' counsel further urged that the incurring of such indebtedness has been authorized by later legislation.

The appeal is not to the act of 1881, because the ordinances were passed before that act, but to the act of 1876, under which the company was organized. But I have been unable to find in that act any provision extending the power of municipalities to make contracts for the supply of water.

The result is that the ordinances and proceedings, on the part of the city, were *ultra vires*, and must be set aside.

Mr. Justice Parker took no part in the decision of this case, on account of his engagements in his Circuit.