THE ATLANTIC CITY WATER WORKS COMPANY, PLAINTIFF IN ERROR, v. LEWIS READ, JR., DEFENDANT IN ERROR.

1. The determination of the Supreme Court on the question of the laches of the prosecutor in applying for a writ of *certiorari*, is final, not subject to review on error.

2. When there is a city ordinance prescribing appropriations and the limit of expenditure for city purposes for a stated period, it is criminal for the city council to incur obligations during that period in excess of such appropriations and limit of expenditure, and the obligations so incurred are invalid, pursuant to the crimes act, approved February 7th, 1876. *Rev.*, p. 1294.

3. The water companies act of April 21st, 1876, (*Rev. Sup.*, p. 650), does not modify the operation of the above mentioned crimes act.

4. The act of March 15th, 1881, (*Pamph. L.*, p. 118), authorizing municipal corporations to contract for a supply of water for public uses, did not validate prior criminal arrangements entered into by municipal authorities for a water supply.

5. In view of the public policy embodied in the crimes act above mentioned, persons dealing with municipal authorities are required to exercise reasonable diligence to ascertain, before attempting to bind the public by obligations outrunning the official life of those boards who are willing to assume them, whether there be legally provided the funds from which the obligations may be met; and in the absence of such diligence, the public will not be estopped from setting up the illegality of the obligations, by the fact that the other party has acted in reliance upon their validity.

On error to the Supreme Court.

For the plaintiff in error, *S. H. Grey* and *Theodore Runyon.*

For the defendant in error, *W. E. Potter.*

The opinion of the court was delivered by

DIXON, J.    The facts of this case appear in the opinion delivered in the Supreme Court.    20 *Vroom* 558.    The judgment of that court, setting aside and annulling two ordinances for providing a supply of water for Atlantic City, approved October 21st, 1880, and November 19th, 1880, and the contract between the city and the Atlantic City Water Works Company, dated November 23d, 1880, and embodying said ordinances, has been removed to this court by writ of error at the instance of the water company, and is here assailed for the following reasons :

*First.* Because the writ of *certiorari*, by which the municipal proceedings were brought before the Supreme Court, was improvidently allowed and should have been dismissed.

*Second.* Because the prosecutor in *certiorari*, now the defendant in error, was, by his laches, estopped, at the time of the allowance of the writ of *certiorari*, from lawfully obtaining the same.

*Third.* Because Atlantic City had, at the time of the passage of the ordinances and the making of the contract, full power and authority in the premises.

So far as the laches of the prosecutor in applying for the writ of *certiorari* is concerned, it must now be regarded as settled, that the determination of the Supreme Court is final—not subject to review here on error.    It was so held by this court in *State* v. *French*, 4 *Zab.* 736, where the Supreme Court had allowed and sustained the writ, notwithstanding the allegation of laches, and in *Weart* v. *Jersey City*, 14 *Vroom* 662, where that court had dismissed the writ for laches.

The other points of controversy may be resolved into these three inquiries :  First.  Were the ordinances and contract

originally legal? Second. If not, have they since been legalized? Third. If not, are the tax-payers and residents of the city (of whom the prosecutor in *certiorari* is one), estopped from setting up the illegality?

The original illegality of these proceedings is manifested by the following considerations: When the ordinances were passed and the contract was signed, there existed a city ordinance, which prescribed the appropriations and limit of expenditure for city purposes, for the term beginning on the first Monday in September, 1880, and ending on the first Monday in September, 1881, and which provided funds to meet the various expenditures. This ordinance made no appropriation for the objects sought by the proceedings now under review, and fixed a limit of expenditure within which the obligation incurred by those proceedings cannot possibly be confined. A statute of this state, approved February 7th, 1876 (*Rev., p.* 1294), renders it criminal for city councils to incur any obligation in excess of the appropriation and limit of expenditure provided by law. In speaking of this statute, the chief justice delivering the opinion of this court in *Halsted* v. *State*, 12 *Vroom* 552, said: " The system clearly defined here is that a certain fund is provided for all the expenses and disbursements and obligations to be incurred during the current year, and that every obligation or debt incurred during such year is to be paid out of the fund so provided, and that all debts incurred, which are to be paid out of a fund to be raised in the future, are in excess, or what is the same thing, in transgression of the limit of expenditure established by law." The ordinance above referred to was the law of the corporation, and the appropriation and limit of expenditure fixed by it became those provided by law. There existed no others. The incurring of any obligation beyond the provisions of that ordinance was, therefore, plainly prohibited. Consequently, those councilmen who voted to incur the obligation assumed by the present ordinances and contract, committed a misdemeanor, *State* v. *Halsted*, 10 *Vroom* 402; *Halsted* v. *State*, 12 *Vroom* 552; the ordinances were unlawful, (*Siedler* v. *Freeholders of Hudson*,

10 *Vroom* 632), and the contract or obligation itself was invalid. *Crampton* v. *Zabriskie*, 101 *U. S.* 601.

Counsel for the plaintiff in error seem to contend that the statute under which the Water Company was organized, approved April 21st, 1876 (*Rev. Sup., p.* 650), modified the operation of the crimes act above mentioned in such a way as to prevent its application to the proceedings in question. But there is no ground for the contention. That statute confers on the city the right and power of consenting to the association of persons for supplying it with water and to their laying pipes in its streets (*Davis* v. *Town of Harrison,* 17 *Vroom* 79), but all that may be done in entire harmony with the purposes of the crimes act.

Unless, therefore, some act of the legislature be found legalizing these unlawful proceedings, they must be adjudged invalid. Of course, statutes prior to the crimes act cannot have such an effect, for anything in them inconsistent with its provisions was abrogated upon its passage. Hence, we need not examine the city charter. The only other law referred to in this connection is an act approved March 15th, 1881 (*Pamph. L., p.* 118), to authorize municipal corporations to contract for a supply of water for public uses, a supplement to which was passed April 7th, 1884. *Pamph. L., p.* 194. This act authorizes cities to make contracts for a water supply during a term not exceeding ten years, with a proviso that it shall not apply to any city which, at the time of its passage, was supplied with water for public use, pursuant to a contract or arrangement with some board or corporation. On this proviso counsel argues that existing arrangements for water supply, between cities and corporations, which did not amount to contracts, were recognized and rendered obligatory. We think the argument is fallacious for several reasons. In the first place, it should not be assumed that the legislature contemplated arrangements which, like this before us, were criminal. In the next place, the legislature, so far from indicating a purpose to validate any existing arrangements, has expressly declared that the act shall not apply to any city having a

water supply pursuant to such arrangement. And lastly, the title of the act does not express or include the design of validating prior illegal arrangements.

Our conclusion is, that the ordinances and contract were and remained unlawful.

It is yet to be considered whether the tax payers of the city are estopped from setting up the illegality.

The water company insists that such an estoppel arises from the fact that its incorporators became organized and the corporation constructed its works, in reliance on the validity of these municipal proceedings.

But we think that the reliance here assumed was not justified, but, on the contrary, that the incorporators and the corporation are chargeable with notice that the proceedings were invalid. The illegality sprung out of a general, public, criminal statute, of the provisions of which all persons in the state are presumed to be cognizant. The evidence in the cause does not indicate, nor do counsel claim, that the city authorities ever asserted, or the water company, its incorporators or agents, ever supposed that such facts existed, as, under this law, would warrant the city council in assuming an obligation to pay at least $7500 annually for ninety nine years. In view of the public policy which this statute embodies, persons dealing with municipal authorities must be required to exercise some reasonable diligence to ascertain, before attempting to bind the public by obligations far outrunning the official life of those boards who are willing to assume them, whether there be legally provided the funds from which the obligations may be met. In the absence of such diligence, contracting parties deal with these official bodies at their peril. The beneficent aims of the law cannot be otherwise attained. Inasmuch, then, as the Water Company had no reason for supposing this extraordinary contract to be within the lawful authority of the city council, it must be held to have had notice of its illegality, and the subsequent conduct of the company cannot, in law, be regarded as having been influenced by any reliance upon its validity.

A claim is also made that an estoppel arises from the fact that, after the company had constructed the hydrants called for by the contract, the fire companies of the city drew water therefrom for the suppression of fires. But assuming that these companies were the agents of the city in what they did, it is not perceived how their acts could bind the city beyond the payment of a fair compensation to the water company for the services thus rendered. Their acts were certainly not referable to the contract now under consideration, for when they were performed the city council had itself formally repudiated the ordinances on which the contract rested. And it was no more within the power of the fire companies than it was within the power of the city council to incur obligations of the extent here claimed against the municipality.

We find in the record no error, and the judgment of the Supreme Court should be affirmed.

In reaching this conclusion we have not considered, and do not intend to pass upon, the validity of the mere consent which the city, by these ordinances, gave under the act of April 21st, 1876.

GARRISON, J. (dissenting).    I am unable to reach the conclusion that the supplemented ordinance, passed by the common council of Atlantic City on November 19th, 1880, was *ultra vires*.

The ordinance in question gave the formal consent of the city that the Atlantic City Water Works Company might become incorporated for the purpose of supplying Atlantic City with water. By a proviso to this ordinance, the city stipulated that its minimum water supply should be fifteen fire hydrants to each mile of street pipe, and fixed the price it might be charged as an annual rental for each hydrant.

Attack is now made upon this ordinance solely because of this proviso.

In the court below the main contention was that the unpaid water rentals which had accumulated since the completion of the works in 1882, constituted "a debt of the city in excess

of $35,000," its charter limit of indebtedness, and the argument was that therefore the ordinance of 1880, under which the water company became incorporated, was *ultra vires*.

This view was adopted by the Supreme Court, and is the ground upon which the opinion of that court proceeds.

*Ultra vires* raises the single question of the powers possessed at the time of alleged impotence.

At the time of the passage of this ordinance, Atlantic City had, under its charter, authority " to provide for a supply of water."

Another section of the charter of Atlantic City clothed its city council with the power " to order the raising and (to) cause to be raised, by tax, from year to year, such sum or sums of money as they shall deem expedient for defraying the expenses of supplying the said city with water."

After the city council, under the authority first cited, had passed the ordinance in question, the power conferred by the latter section became, as to subsequent councils, an imperative duty.

The rule of law is well established that a municipal power, couched in words permissive in form, becomes mandatory whenever the municipal body takes action demanding for its accomplishment the exercise by it of such power.

In an early case, in the United States Supreme Court (Miner *v.* Bank), Mr. Justice Story speaks of this as " a well-known rule in the construction of statutes." 1 *Pet.* 64.

In *Mason* v. *Fearon,* 9 *How.* 250, Mr. Justice Woodbury says : " In the case of a law and of public officers, and as to acts affecting third persons, the authority thus conferred (viz., permissive or discretionary), must be construed to be peremptory."

In a later case, *United States* v. *Rock Island,* 71 *U. S.* 435, the language of the statute was almost identical with, and the circumstances not different in principle from, the present case. In his opinion, Mr. Justice Swayne says : " The conclusion to be deduced from the authorities is, that when power is given to public officials in the language of the act before us, or in

equivalent language, whenever the public interest or individual rights call for its exercise, the language used, though permissive in form, is, in fact, peremptory. This rule is the settled law of both countries."

The rule thus laid down has found application in innumerable cases in the federal and state courts, and has been recognized and applied in cases in this state. *Miner* v. *Bank*, 1 *Pet.* 64; *Mason* v. *Fearon*, 9 *How.* 250; *United States* v. *Rock Island*, 71 *U. S.* 435; *Galena* v. *United States*, 5 *Wall.* 705; *United States* v. *New Orleans*, 98 *U. S.* 381; *Newburgh* v. *Miller*, 5 *Johns. Ch.* 114; *Henford* v. *Omaha*, 4 *Neb.* 350; *Veazie* v. *China*, 50 *Me.* 526; *Ohio* v. *Chase*, 5 *Ohio St.* 53; *Cox* v. *Lyons*, 17 *Iowa* 1; *Reed* v. *Bainbridge*, 1 *South.* 351; *Seiple* v. *Elizabeth*, 3 *Dutcher* 407; *State* v. *Newark*, 4 *Dutcher* 491.

When we consider that in the great majority of cases in which this rule is applied to compel the raising of money by municipal bodies, the power to tax was only inferentially assumed from the power to create the obligation, no doubts can be entertained as to its applicability to a case like the one before us, in which the power to tax is specifically conferred for a particular purpose, and the mode of its exercise clearly indicated.

The language, then, of the charter of Atlantic City permitting the city council to raise, from year to year, a tax for the purpose of defraying the expenses of their water supply, became, by the act of the city council in contracting for such a water supply, to be paid for in such a manner, a mandate, obedience to which, in construing the powers of the city, must be presumed; disobedience to which could certainly confer no powers greater than those consistent with compliance.

An illustration of this doctrine, viz., that a permissive power thus made mandatory will be construed in the light of what is thus commanded, whether, in fact, it was done or not, is found in the case of *State* v. *Newark*, 4 *Dutcher* 491. In that case the amended charter of the city of Newark, passed March 11th, 1857, conferred upon city council full power, by

ordinance, to lay out streets; a subsequent act of the legislature authorized, in permissive language, the appointment, by city council, of five commissioners, who, when appointed, should have exclusive power to lay out streets and highways. City council appointed these commissioners, but, before doing so, they, by ordinance, laid out a certain street. Upon *certiorari* this ordinance was held to be void, although passed before the city availed itself of the power to appoint the commissioners, upon the ground that the permissive language of the act being, in law, mandatory, city council could not, by neglect to obey its mandate, give to their acts a significance inconsistent with obedience to it.

In the case before us, upon application of these principles, the only council not called upon to raise a water tax was the council which gave consent to the incorporation of the supplying company, the raising of this tax being, by the terms of the charter, a power to be exercised from year to year for the purpose of defraying the expense current of water as supplied.

These views, as to the powers and duties of successive councils of Atlantic City, under its charter, are in accord with the opinion of the Supreme Court, in the case of *Atlantic City Water Works Co.* v. *Atlantic City*, 19 *Vroom* 378, in which the question was directly ruled. "The authority," said Chief Justice Beasley, in delivering the opinion of the court in that case, "to provide water for the public is given to common council by a previous section of their charter, and consequently the clause, giving the power to raise water tax from year to year, has not the restrictive effect ascribed to it. The power to raise money annually is quite as consistent with an agreement calling for annual payments throughout a series of years as it is with an agreement for but a single year."

My conclusions upon this branch of the case are, that at the time of the passage of this ordinance, Atlantic City possessed all the powers necessary to enable it to provide for a supply of water in the manner in which it did, and to raise, by taxation from year to year, the tax to defray the rentals contemplated by this ordinance; and that by exercising the former

power it compelled itself to employ the latter one; and that upon the question of the possession of powers, the subsequent conduct of the city is devoid of significance; and that the debt now claimed by Atlantic City to be in excess of its charter limit, was not a debt created in excess of the powers of the city, but results solely from the city's lawless defiance to its own mandates.

But it is further urged that this ordinance is void, because it was a crime for the city council to vote for it. This contention, which is not considered in the opinion delivered in the court below, proceeds upon the ground that Atlantic City, by the stipulation in the proviso upon which its consent to the incorporation of the water company was conditioned, incurred an obligation prohibited by an act entitled " A supplement to an act entitled ' An act for the punishment of crimes,' " approved February 7th, 1876. *Pamph. L., p.* 16.

The prohibition of this criminal act is against voting for disbursements where the money is not in hand, or the incurring of obligations in excess of the fund at the disposal of council for that purpose. The mischief to be reached is the incurring of municipal debt where payment could be made or provided, and the remedy is that every such obligation shall be preceded by the power to meet it. Within the scope of the act thus construed fall all obligations which can, *i. e.*, which are capable of being met either by cash in the treasury or by an appropriation of money, and this without regard to any futurity of payment arising from the terms of the obligation itself. *State* v. *Halsted,* 10 *Vroom* 402.

It is clear to my mind that, adopting this construction, the prohibition of this criminal act does not extend to the provisions of the ordinance in question, for the reason that the obligation of this ordinance is not of the class contemplated; it could not be discharged by any disbursement of money, no matter how full the treasury, nor could any appropriation of money, however large, be provided or applied to the purposes of the obligation by the council which incurred it. The obligation of this ordinance of 1880 was that when the water

works should be completed, in 1882, and ready to supply water, Atlantic City would be a consumer to an amount annually varying with the needs of the city, and that for water so supplied an annual rental at a fixed price per hydrant might be charged.

This proviso, for it is all in the proviso, contemplated no debt; it created no present liability a disbursement could extinguish; it incurred no future obligation for which an appropriation in gross could be made. It established a system of public benefits continuous in character, the obligations incident to which would arise currently in the future operation of the system, to be met by current taxation, under a power contained in the city charter for that particular purpose therein specified, to be used, not once for all, but from year to year.

The considerations which led to the conclusion that this ordinance was not repugnant to the charter of Atlantic City, on the ground of indebtedness, apply with equal, if not greater, force here.

The case of the State v. Halsted is clearly distinguishable from the present. In that case a lot of land for a court house was purchased and ordered to be paid for out of a future appropriation. It was held that the devise of making the payment of the obligation fall due in the future did not strip the act of its indictable character.

The distinction and true test is whether the futurity of payment is the result of the convention of the parties, or whether it arises inevitably from the inherent nature of the obligation, and is coupled with a power to meet it as it accrues. In the former case the statute applies; in the latter, it does not.

A lot of land may be paid for when purchased; but water rentals, of varying amounts, for an indefinite series of years, cannot be computed, much less covered, by an appropriation in any one year; nor was it the intention or policy of the law to throw the aggregate burden of an entire system of continuous public benefits upon the council which inaugurated it.

Let any one attempt to suggest the form and amount of an appropriation, as of the year 1880, to meet the obligations of

this ordinance, and he will speedily and surely be convinced that it does not fall within the purview of an act based upon,. not only the feasibility, but the necessity, of a cash disbursement or an antecedent appropriation.

A further reason why this act did not prohibit the passing of this ordinance is because the city council had the power to meet the only obligation it occurred.

What this criminal statute demands is that where the means required to meet and discharge the proposed obligation have to be created or called into existence by some act of the council itself, as by providing the money necessary for a disbursement or the levying of a tax for the fund for an appropriation, such money or such fund shall be in hand as the only evidence of the power of council to meet the obligation. But here the power existed in the charter of the city, and the time and mode of its exercise were specifically appointed. Council could neither create, alter nor add to this power; it could only recognize it and act accordingly. This done, the rule of law annexed peremptorily performance to promise, and the power in the charter became part of the ordinance of council.

It cannot be maintained, in the endeavor to bring this ordinance within the ban of this criminal statute, that the exercise of this power of current taxation contained in the charter, should have preceded the passage of the ordinance requiring its further exercise. For, by the terms of the charter, its exercise is to be from year to year, to defray current expenses of water as supplied. And its employment did not become compulsory, or even possible, until the passage of the ordinance. Every motive of public convenience would indicate that the only time to arrange the details of an annual levy of a specific sum for water rentals, would be after, not before, the inception of the enterprise, and the determination of the amount to be raised.

The statute of 1876 did not require that the details of the execution of the power to meet obligations should be settled before an obligation could be incurred, but only that the power to meet it without incurring a debt should exist. That

such a power existed in this case is nowheres questioned; that the debt arose not from lack of power to meet it, but from refusal of councils to apply the power they had, cannot be and is not denied. But can the fact that subsequent councils neglected to levy the tax provided for by their charter and called for by the ordinance, affect the right of a prior council to recognize and act upon the admitted power contained in the charter?

An act not criminal when committed, cannot become so by the subsequent failure of some other person to do or to leave undone some other thing.

An act not *ultra vires* when passed, cannot become so afterward.

An act which is not *ultra vires* if the municipality uses the powers it possesses, and is, by law, compelled to use, cannot be made *ultra vires* by the lawless refusal of the body to employ its powers. *Ultra vires* is a question of the possession, not the employment of powers.

But this is a criminal statute now invoked, and will it be insisted that it can be so construed as to make it a crime for council to have passed this ordinance without first formulating the details, and passing a scheme for current taxation, as empowered by the charter? That is to say, that when the common council of Atlantic City passed this ordinance, while they could not have met its requirements by any disbursement of money, or by any appropriation of money, they could, by appropriate legislation, have indicated the manner in which they intended to avail themselves of the power given by their charter to defray the annual expenses by a tax raised from year to year, and, therefore, not to have passed such appropriate legislation is a crime within the meaning of the statute of 1876.

But by the act of contracting for a water supply the city had compelled itself to employ the instrumentality contained in its charter; a result reached by operation of law is of more binding effect than a repealable act of municipal legislation.

A complete answer, however, to such a construction is, that

this is a statute defining a crime.   To substitute appropriate·
legislation, or any such notion for appropriation or disburse-
ment of money, is not only to admit that the act, as drawn,
does not apply to this case; it is extending the scope of a
criminal definition beyond the express words of the act.   This
cannot be done.   *Lair* v. *Killmer*, 1 *Dutcher* 522.

The result of these views would be to except from the
operation of this criminal statute all those municipal acts
which have for their object the establishment of a system of
public benefits, whenever the municipal body is thereunto
authorized by its charter, or by general legislation, and is, by
the source of its power, directed to raise, currently, the expenses
incident to the operation of such system.

The exception thus indicated would include not only systems
of lighting, gas, electricity and water, when the power to tax
accompanies the power to contract, but it applies also to police
systems,  and to all other bodies of officials holding for more
than the year of their appointment, or under our tenure of
office act; for, if in all cases appropriation must precede obli-
gation, the greatest embarrassment will follow in these cases.
If to the questions which will arise from indefinite terms of
office, we add those likely to arise as to the illegality of the
elections or appointments, and of the acts of such incumbents,
and the liability of city councilmen to suffer fine and impris-
onment for participation in such elections, we shall see that
this question is of the utmost importance to municipalities
throughout the state.

I have considered this question as if this ordinance was·
strictly amenable to the provisions of the Crimes act of 1876,
but in reality the question is not so broad.

Atlantic City, authorized by its charter, and in compliance·
with the act for supplying cities with water, granted by ordi-
nance the formal consent which established between the two
corporations the relation of supplier and consumer.

Unless city council had qualified its consent with some stip-
ulation as to the quantity of water it should have supplied to·
it, and as to the price it should be charged for such supply, it

would have left the city entirely at the mercy of a corporation, which, by its own act, it had placed beyond the reach of competition. To have omitted to throw this protection around its grant, would have been negligent in the extreme. As was said by Mr. Justice Magie, in *Davis* v. *Harrison*, 17 *Vroom* 79, 85, " It is difficult to perceive why consent of the municipal corporation was made requisite, unless to enable it to provide against exorbitant charges on the part of the company, which, after consent once given, would practically be possessed of a monopoly, and could exact what terms it chose."

The provisions against extortion, which cannot but meet with judicial approval, form, in the present case, the sole and only ground of objection to the ordinance which embodies them.

So that the question really presented for determination on this record is, whether a city council, empowered by its charter to contract for a supply of water, and directed to raise from year to year the current expenses of such supply, is guilty of a crime, if in lawfully consenting to incorporation of a supplying company, it protects its city from extortion by a proviso, which stipulates the price and minimum quantity of water to be furnished.

I cannot think that the obligation thus incidentally arising is within the prohibition of the act in question.

I shall vote, therefore, to reverse the judgment rendered in the Supreme Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, REED, SCUDDER. 7.

*For reversal*—GARRISON, BROWN, CLEMENT, COLE, MC-GREGOR, PATERSON, WHITAKER. 7.