THOMAS J. McGOVERN, PROSECUTOR, v. THE INHABITANTS OF THE CITY OF TRENTON, AND CHARLES A. REID & COMPANY.

Argued November 7, 1912—Decided March 28, 1913.

1. The repaving of a street is an improvement within the meaning of the charter of the city of Trenton, providing for improvements, but since none of the sections or paragraphs of the charter refers to and provides for repaving it does not fall within the operation of section 107, relating to improvements provided for by the act, in that the contract therefor shall be let to the lowest bidder.

2. The act entitled "An act for the repavement of streets in cities of this state and for issuance of bonds in payment therefor" (*Pamph. L.* 1898, *p.* 43), applies to the city of Trenton, and enlarges the scope of its charter so as to include repaving.

3. The act of 1912 (*Pamph. L., p.* 593), entitled "An act relating to the expenditures by public county, city, town, township, borough and village bodies," is constitutional and expresses the object of the act in its title in conformity with article 4, section 7, paragraph 4 of the constitution.

4. Under the act of 1912, requiring the letting of contracts to the lowest responsible bidder, the fact that a sample submitted by a higher bidder was of a better brick for a higher price than the lower bid, furnishes no legal justification for awarding the contract to the higher bidder, where the sample submitted by the lowest responsible bidder comes up to the standard of the proposal.

On *certiorari.*

Before Justices Swayze, Voorhees and Kalisch.

For the prosecutor, *John H. Backes.*

For the defendants, *Charles E. Bird,* for the city of Trenton; *Linton Satterthwait,* for Charles A. Reid & Co.

The opinion of the court was delivered by

Kalisch, J. The writ in this case brings up for review a contract made by the city of Trenton with Charles A. Reid & Company to repave North Montgomery street with Metropolitan block brick at $1.81 per square yard. The prosecutor's bid was $1.52 per square yard for Porter repress brick. The prosecutor was the lowest bidder. The contract was awarded to Charles A. Reid & Company, a higher bidder. The facts agreed upon are that the prosecutor in submitting his proposal for the doing of the work under the contract with Porter repress paving brick, in all manner complied with the specifications and the advertisement for said proposal; that these said brick with which the prosecutor proposed to do the work of repaving the said street, as per samples, submitted with his proposal, in all manner met the requirements of the specifications; that the prosecutor is a qualified bidder within the meaning of the charter of the city of Trenton; that the board of commissioners, in awarding the contract to Charles Reid & Com-

pany, acted in good faith; that they regarded Metropolitan block as superior in quality to the Porter brick, and that the selection of the Metropolitan block was for the best interest of the city.

Section 107 of the city charter provides: "That all contracts for doing work, furnishing materials for any improvements, provided under this act, extending in amount to $200, shall be advertised for ten days * * * and shall, at all times, be given to the lowest bidder or bidders who shall give satisfactory proof of his or their ability to furnish the requisite materials and perform the work properly, and offer sufficient security for the faithful performance of the contract in regard to time, quality of material, and work to be done."

The defendants' claim is that the restrictions of this section are limited to improvements provided under the act of which this section is a component part. Hence, it is argued since the work was for repaving it is not an improvement which requires, under said section, the advertising for bids, and the awarding of the contract to the lowest responsible bidder for all improvements costing more than $200.

The case of *Trenton* v. *Shaw*, 20 *Vroom* 638 (Court of Errors and Appeals), is relied upon as a support of this contention. In that case, as in this, section 107 of Trenton's city charter was pertinent to the inquiry, and Chief Justice Beasley, who delivered the opinion of the court, on *p.* 640, points out the various paragraphs and sections of the charter where the term "improvement" is used, and concludes with the observation that "these all relate to the opening, grading and paving of streets, graveling the sidewalks and gutters, constructing drains and sewers, and filling up low pieces of ground. There is nothing else in the charter that is styled improvements. And this is plainly in accordance with legal nomenclature, for in statutes, in judicial opinions, and in treatises by lawyers, whenever the expression 'municipal improvements' is used, it is the matters designated in the section of the charter of the city just referred to that are exclusively its subject. In every in-

stance the term means some use or melioration of land for public purposes."

The repaving of a public street is certainly a betterment of it in its general use by the public for public purposes.

In the light of the reasoning of the eminent jurist just quoted, it becomes clear that it is an improvement within the meaning of the charter.

But, since none of the sections or paragraphs refers to and provides for repaving it does not fall within the operation of section 107 relating to improvements provided for by that act.

We think authority, however, for the inclusion of repaving as an improvement within the meaning of section 107 of the charter is to be found in an act entitled "An act providing for the repavement of paved streets in cities of this state, and for the issuance of bonds in payment therefor." *Pamph. L.* 1898, *p.* 43.

This act clearly applies to the city of Trenton. Its legal effect was to enlarge the scope of section 107 of the charter, so as to include repaving within its operation. *Hurley* v. *Trenton,* 37 *Vroom.* 538; *affirmed,* 38 *Id.* 350.

But if there be any doubt in this regard it is dissipated by the act of 1912 (*Pamph. L., p.* 593), which requires contracts to be awarded to the lowest responsible bidder.

The defendants insist that this act is in violation of paragraph 4, section 7, article 4 of the constitution, in that its object is not expressed in its title, and hence is invalid.

The title of this act is "An act relating to expenditures by public county, city, town, township, borough and village bodies."

The defendants concede that the object of the act, as expressed in the body, is to compel public advertisement for bids and the award of contracts to the lowest responsible bidder whenever a public body should desire to "let contracts or agreements for the doing of any work, or for the furnishing of any materials or labor, where the sum expended exceeds the sum of $500," &c., and their claim is that the body of the act does not relate to expenditures by

public bodies, as stated in the title, but only relates to the awarding of contracts by public bodies.

We think the distinction attempted to be drawn is wholly chimerical. Although the term "expenditure" does not occur in the body of the act, the subject-matter dealt with therein relates to the award of contracts and agreements made by public bodies, which in their very nature require the expenditure of public moneys.

We cannot conceive of any good reason why an act relating to expenditures does not properly embrace the method by which expenditures are to be made.

Moreover, we think the language in the body of the act after referring to contracts or agreements made by a public body and which limits the application of the act to only where the sum expended exceeds $500 emphasizes the pertinency of the object of the act to its title.

It is further urged by the defendants that if the act of April 1st, 1912, is held to be valid its requirements had been complied with in awarding the contract to Reid & Company.

The argument made in support of this is to the effect that the spirit of the act requires that all intending bidders be placed on equality in submitting their bids. It does not prescribe how specifications shall be drawn nor does it fix the condition which the municipal officers may impose. It is, therefore, urged that the inference be drawn from the fact that the specifications called for samples of brick that it was understood that the quality of the sample would control the award. And this is said to be made clear by the fact that all of the bidders, including the prosecutor, submitted several bids at different prices for the different samples, and that the prosecutor did not understand that the brick for the lowest price would necessarily or even probably be selected.

The obvious answer to this is:

The proposal for the work fixes a standard. The fact that the samples were required to be submitted was in nowise for the purpose of altering the standard fixed by the pro-

posal. The agreed state of the case shows that the brick submitted by the prosecutor complied with the proposal. For this reason the defendants' contention cannot prevail.

In *Case* v. *Trenton*, 47 *Vroom* 696 (Court of Errors and Appeals), samples of the materials to be used were to be submitted, and Mr. Justice Reed, in speaking for the court, on *p.* 698, says: "One purpose of the deposit of these samples was obviously to enable the engineer to ascertain whether they conformed to the description contained in the proposal; but another purpose was that they should remain as standards by which all materials furnished in executing the work could be compared."

We are unable to see how the submission of various samples by the bidders in anywise relieves the commissioners from the statutory duty of awarding the contract to the lowest bidder, provided that he has submitted a sample which comes up to the standard of the proposal.

To adopt any other view would be destructive of the legislative policy which manifestly was and is to guard against favoritism and extravagance in the award of contracts for work and materials let out by public bodies for public uses.

Because a sample submitted by a higher bidder is a better brick for the higher price than the lower bidder would furnish is no justification for the award to a higher bidder. If it were otherwise, then it is manifest that the statutory requirements for public letting is a useless procedure. It appearing from the agreed case that the prosecutor in submitting his proposal for the doing of the work and furnishing the brick under the contract complied with the specifications, requirements and advertisement in all particulars and was the lowest bidder, the contract should have been awarded to him.

The proceedings will be set aside, with costs.