## IN THE

# SUPREME COURT

### OF

# OREGON.

Argued October 10, affirmed December 5, 1922, argued and submitted on rehearing February 9, former opinion sustained June 12, 1923.

## TWOHY BROS. CO. *v.* OCHOCO IRRIGATION DISTRICT ET AL.

(210 Pac. 873; 216 Pac. 189.)

Waters and Watercourses—Irrigation District a Municipal Corporation.

1. An irrigation district organized under the Irrigation District Act is a municipal corporation, its property public property, and its officers public officers, elected by the legal voters of the irrigation district, with duties and powers fixed and limited by the law of their creation.

Waters and Watercourses—Scope of Judicial Examination of Organization and Acts of Irrigation District Stated.

2. Where the Circuit Court enters a judgment of confirmation of proceedings in the organization or subsequent acts of irrigation districts under Laws of 1919, page 693, the scope of the judgment includes a judicial examination as to the regularity and legality of: First, the organization proceedings; second, the issue and sale of the bonds of the district; third, the order of the County Court declaring the organization of the district; fourth, the declaration of the result of any district election; fifth, the order of the board including in or excluding land from the district; sixth, the order of such board levying any assessment; seventh, the issue of any bonds or determining any bond issue; eighth, the legality of proceedings authorizing a contract with the United States.

Waters and Watercourses—Irrigation District may Defend Action at Law Because of Invalidity of Contract Sued on.

3. Where an irrigation district is sued for the reasonable value of work done for it by a construction company, the district may defend itself and assert the invalidity of the contract under Section 7318, Or. L., authorizing the board to sue, appear, and defend in all courts, actions, suits, or proceedings.

108 Or.—1                    (1)

**Statutes—Courts may Consider Executive Construction of Doubtful Statute.**

4. In cases of doubt and ambiguity, the courts may consider an executive construction of a statute, but, whenever the words of the law are clear and the true meaning evident on the face of the act, there is never any room for construction.

**Statutes—Practical Construction of Irrigation Act to be Considered must be General, and not Local.**

5. In order that the courts may consider general usage and practical construction of the Irrigation District Act, which is a state statute, the interpretation placed thereon must be general and not local.

**Statutes—Every Part of Act must, if Possible, be Given Effect.**

6. In the construction of statutes, effect, when possible, shall be accorded to every section, clause, phrase, or word of the legislative act.

**Waters and Watercourses—Provision of Irrigation Act Requiring Contracts to be Let After Competitive Bids Mandatory.**

7. Irrigation District Act, Section 37, as amended by Laws of 1911, page 390, Section 11, calling for competitive bids for the construction of canals, reservoirs, or works of the district after notice by publication, is not permissive, but mandatory, and a contract for construction of irrigation works entered into by the district without advertising for bids is invalid.

**Waters and Watercourses—Contractors Dealing With Irrigation District Chargeable With Knowledge of Authority of Directors.**

8. Contractors dealing with irrigation districts are charged at their peril with knowledge of the authority of the board of directors.

**Waters and Watercourses—Statutory Requirement for Competitive Bids for Public Contracts Mandatory.**

9. Under a statute requiring competitive bids for public contracts, that mode is exclusive, and must be followed, or else the contract is void.

**Waters and Watercourses—Invalid Contract of Irrigation District not Subject to Ratification Without Complying With Requirements Omitted in Original Contract.**

10. Where a contract between an irrigation district and a construction company was invalid because not let in pursuance to Irrigation District Act, Section 37, as amended by Laws of 1911, page 390, Section 11, calling for competitive bids after publication, such contract could not be ratified by the district without complying with the provisions of the statute as to competitive bids.

---

10. Ratification by public corporation of invalid contract, see note in **L. R. A.** 1915A, 1023.

**Waters and Watercourses—Irrigation District not Liable as upon Implied Contract for Work Done Under Contract not Complying With Mandatory Statute.**

11.   Where an irrigation district entered into a contract with a construction company without complying with the mandatory provisions of Irrigation District Act, Section 37, as amended by Laws of 1911, page 390, Section 11, calling for competitive bids after publication, and the construction company performed work for the district thereunder, the district was not liable as upon an implied contract.

**Estoppel—Suit not Shown to have Been Pursued to Judgment Held not to Estop Irrigation District from Asserting Invalidity of Contract With Construction Company.**

12.   In a suit by a construction company against an irrigation district to recover the reasonable value of services rendered, the defendant was not estopped to set up the invalidity of the contract as failing to comply with the mandatory provisions of Irrigation District Act, Section 37, as amended by Laws of 1911, page 390, Section 11, calling for competitive bids after publication, because of bringing a suit to restrain plaintiff from removing its supplies and equipment from the work before completion, it not appearing from the pleadings whether a hearing was ever had, or any judgment rendered in such cause, the presumption being that no such judgment was ever rendered.

**Municipal Corporations—Construction of Public Utilities for Convenience of Inhabitants Exercise of Proprietary Powers.**

13.   The construction, operation, and maintenance of waterworks, gas works, and lighting plants by a city for the benefit and convenience of its inhabitants constitute the exercise of private and proprietary powers.

**Waters and Watercourses — In Constructing Its Irrigation System, District Exercises Proprietary Power.**

14.   An irrigation district, in constructing its irrigation system, exercises a private or proprietary power.

**Waters and Watercourses—Irrigation District Derives All Its Power from Statute of Creation.**

15.   An irrigation district derives all its power from the statute under or by which it is created.

**Waters and Watercourses—Persons Dealing With Irrigation District Charged With Notice of Extent of Its Powers.**

16.   The governing act of an irrigation district being a public statute, one dealing therewith is charged with notice of the extent of its powers and limitations and restrictions on the exercise thereof.

---

11.   Liability of municipality or other public corporation on implied contract, see notes in 2 Ann. Cas. 509; 27 L. R. A. (N. S.) 1117–1130.

**Municipal Corporations—Exercise of Granted Power Limited to Specified Mode Excludes Exercise Thereof in Other Manner.**

17. A grant of power, the exercise of which is restricted and limited to a specified mode, excludes exercise thereof in any other manner.

**Municipal Corporations—Legislature may Restrict and Limit Exercise of All Municipal Power Granted by It.**

18. The plenary authority of the legislature to restrict and limit the exercise of municipal power, extends to all powers granted, whether public or governmental, proprietary or private.

From Multnomah: Robert Tucker, Judge.

Department 1.

The plaintiff is a private corporation engaged in construction work. The defendant Ochoco Irrigation District is a municipal corporation organized under the Oregon Irrigation District law. Plaintiff prays for an accounting, and—

"that it be decreed that the reasonable value of the work done and materials furnished by plaintiff in the performance of said work is the full sum of $536,170.99, and that plaintiff be given a judgment against said district for any balance thereof that shall remain unpaid after said accounting";

also, for the cancellation of certain writings.

From plaintiff's averment, it has been paid the total sum of $302,469.33. The defendant alleges that it has paid to plaintiff the full sum of $309,007.02, and that said sum of money is equal to the value of all work done by plaintiff and all materials furnished under the alleged contract referred to in the amended complaint. A number of exhibits attached to plaintiff's amended complaint and made a part thereof, too voluminous to be set forth in full herein, constitute a contract for the construction of a canal fifteen and one-half miles in length and a dam for the purpose of impounding the waters of a stream known as Ochoco River.

On May 19, 1917, the Irrigation District executed a written agreement with Clark-Kendall & Co., reading, in part, as follows:

"Whereas, Ochoco Irrigation District, for the purpose of procuring necessary reclamation works and acquiring the necessary property and rights therefor and for otherwise carrying out the provisions of the law relative to irrigation districts, has heretofore duly authorized an issue of bonds in an amount not to exceed $1,100,000.00; and,

"Whereas, the board of directors of said District deem it for the best interests of the district to use said bonds, or so much thereof as may be necessary, at their par value, for the purchase or acquisition of canals, reservoir sites, water rights or other works, or for the construction, or in payment for the construction of canals, reservoirs, pumping plants, or other works to be used for the irrigation or drainage of land in the district, or any part of said lands; and,

"Whereas, Clark-Kendall & Co., of Portland, Oregon, have had an engineer make an examination of the district for the purpose of making an estimate of the cost of the construction of canals, reservoirs, pumping plants or other works to be used for the irrigation or drainage of the land in the district; and

"Whereas, the estimates made by said engineer on the cost of the main dam for the reservoir and the first 15½ miles of the main canal aggregate approximately $409,500.00, as shown by said estimate for said purposes hereto attached and marked 'Exhibit A'; and,

"Whereas, said last mentioned estimates are in part based on definite rates therein particularly set forth, which said measurements and classifications of material as the work progresses may change and increase or decrease the cost thereof, but which at the present time are incapable of being made more definite than as in said estimate contained; and,

"Whereas, said estimates for the said main dam for the reservoir and the first 15½ miles of said main

canal have been examined and approved by the project engineer and by the board of directors of said district; and,

"Whereas, the board of directors * * have this day duly passed a resolution authorizing the president and secretary for and on behalf of said district to enter into a contract with Clark-Kendall & Co. for the construction of said main dam and the first 15½ miles of said main ditch;

"Now, therefore, for and in consideration of the premises and for One ($1.00) Dollar and other valuable consideration, it is hereby agreed:

"1. Clark-Kendall & Co. shall employ a contractor for the construction of the main dam and the first 15½ miles of main ditch at and for the price set forth in said estimates and in payment therefor shall accept said bonds, or so much as may be necessary, at their par value; provided, however, that said bonds to the extent of 80 per cent of the estimated amount of the construction shall be delivered to said Clark-Kendall & Co. or their assigns, as hereinafter provided, upon their filing a surety bond satisfactory to the district for the completion of the work according to specifications. * *

"4. The specifications for said construction may be modified, changed or added to during the progress of the work * * ."

On August 16, 1917, a supplemental agreement was entered into between the Ochoco Irrigation District and Clark-Kendall & Co. for the construction of the proposed main dam for the reservoir and the first fifteen and one-half miles of the main ditch, which provides, among other things, that:

"Whereas, plans and specifications for said work had not been adopted and approved on said date (May 19, 1917); and,

"Whereas, plans and specifications therefor have subsequently been adopted and approved,

"Now, therefore, it is hereby agreed:

"First. Clark-Kendall & Co. shall employ a contractor for the construction of said proposed main

dam and the first 15½ miles of main ditch, who shall construct same in accordance with the plans and specifications therefor and shall be paid in accordance with the estimates marked 'A' and incorporated in said contract of May 19, 1917 * * .

"It is understood that the total amount to be paid said Clark-Kendall & Co. under said contract of May 19, 1917, the plans and specifications and this supplement thereto, may exceed. $400,000.00, and in that event it is hereby agreed that such amount or amounts in excess of $400,000.00 shall be paid in cash from the proceeds of the sale of the $500,000.00, par value, of the bonds of the district * * .

"The foregoing amounts are predicated upon estimates of the work now contemplated by the plans and specifications."

An acceptance of the specifications was made by Clark-Kendall & Co., for themselves and their assigns, and the contract was duly assigned to plaintiff, Twohy Bros. Co.

The following is taken from the acceptance of the specifications made a part of the complaint:

"(a)  We, or our assigns, are to perform all labor and services and furnish all materials, plant and equipment necessary to complete the work contemplated under this contract and as listed in Exhibit 'A.' * *

"(c)  All work to be done under this contract on the first 15½ miles of the main canal must be completed * * May 1, 1918 * * .

"(d)  * * Ochoco dam and appurtenances must be completed * * on or before May 1, 1919 * * .

"(e)  Whenever in this contract the words 'pay,' 'payment,' 'money,' or words of equal import are used, it is understood that for all amounts up to $400,000.00 payment in bonds of the Ochoco Irrigation District, at their par value, is meant.  For all amounts over and above a total of $400,000.00, payment in cash is meant * *

"(f)    The amount to be paid for work or services performed or materials furnished under the terms of this contract shall be a sum equal to the amount of the actual work done and materials furnished as determined by the engineer under each item in Exhibit 'A,' multiplied by the unit prices applicable to each such item * * ."

Under the heading "General Conditions," set forth in Exhibit "E," we have:

"The word 'contract' shall mean collectively all of the covenants, terms and stipulations contained in the various portions of this contract, to wit: agreement, bond, specifications, acceptance of specifications, and contract drawing. The word 'specifications' shall mean collectively all of the terms and stipulations contained in those portions of the contract known as the general conditions, general specifications, and detailed specifications. * *

"The words 'contract price' shall mean either the unit price or prices, or flat price or prices * * .

"The cost and expense of said work and material shall be borne by the contractor."

On September 15, 1917, the plaintiff and defendant Ochoco Irrigation District entered into a written agreement relating to the manner in which the money realized from sale of bonds should be deposited and drawn upon. Twohy Bros. Co. gave the Irrigation District a surety bond for $400,000, and entered upon the performance of its contract by furnishing material and labor in the matter of the construction of the dam and main canal of the Ochoco Irrigation District. After doing a great deal of work, but before the completion thereof, the plaintiff abandoned its contract. A suit was instituted by this defendant in the Circuit Court of the State of Oregon in and for Crook County, for the purpose of restraining

Twohy Bros. Co. from removing its supplies, equipment and machinery from their

"present location at or upon or connected with the said dam, or from injuring or destroying or interfering with the operation of the same, or in any manner preventing plaintiff from using each and all of said tools, equipment or supplies."

The defendant in the present proceeding filed an answer to plaintiff's complaint. For a first, further and separate answer, it averred:

"That prior to the execution of the several instruments signed by T. H. LaFollett and R. L. Schee, at the time when the said T. H. LaFollett and R. L. Schee were respectively the president and secretary of this defendant, the board of directors of this defendant had given no notice, by publication or otherwise, of their intention to let a contract for the construction of the said dam and canal, or either thereof, nor had they called for bids for the construction of the said dam or canal, or any portion thereof, or for the purchase of any materials to enter into the same. That no notice whatsoever had been published for three successive weeks, or for any other period of time, in any newspaper whatsoever, nor had any action been taken by the board of directors of this defendant providing for any notice of the letting of such contract or of any contract whatsoever for the said construction work, or of any part thereof, or for the purchase of any material to be used therein. That no time was set by the action of the board of directors of this defendant for the receiving or opening of bids for the construction of the said dam or the said canal, or any part thereof, or for the purchasing of any materials to be used in the said dam or in the said canal.

"That neither the plaintiff nor its assignors, the said defendant Clark-Kendall & Co., bid upon the work referred to in the amended complaint; that no bids whatsoever were received from anyone for the

construction of the said dam and the said canal, or for the furnishing of any materials to be used thereon, or for the doing of any portion whatsoever of the said work or for the furnishing of any portion whatsoever of the said material * *.

"That * * the said work was undertaken wholly without competition among bidders, and without any attempt to provide competition or to invite bids therefor * * .

"That plaintiff knew at all times the lack of authority of the said T. H. LaFollett and R. L. Schee to bind this defendant * * ."

The answer contains a number of further and separate defenses.

The plaintiff filed a general demurrer to this defendant's first further and separate answer, which was overruled. Thereupon it filed its reply, and "admitted that the work was not let after competitive bids and that no procedure was had or taken in order to obtain competitive bids." Whereupon, the defendant moved the court—

"to enter a decree dismissing plaintiff's complaint as against this defendant, on the ground that the pleadings admit that the allegations of the first further and separate answer of this defendant are substantially true, and that there was no compliance with the provisions of L. O. L., Section 6206, or with the acts amendatory thereof found in the Session Laws for 1915 at page 245, for 1917 at page 752, and for 1919 at page 205, or with the statutes of the state of Oregon generally, providing the manner in which construction work must be done for an irrigation district * * ."

On December 31, 1921, the court entered an order and decree adjudging that the motion be allowed, from which decree plaintiff appeals. Error of the court is assigned as follows:

1. In overruling and not sustaining plaintiff's demurrer to the answer of Ochoco Irrigation District.

2. In sustaining the motion of defendant Ochoco irrigation District for judgment on the pleadings.

3. In not overruling and denying the motion of defendant Ochoco Irrigation District.

4. In making and entering the decree herein.

Affirmed.

For appellant there was a brief over the names of *Mr. James G. Wilson* and *Messrs. Malarkey, Seabrook & Dibble,* with oral arguments by *Mr. Wilson* and *Mr. E. B. Seabrook.*

For respondent Ochoco Irrigation District there was a brief over the names of *Mr. John K. Kollock* and *Messrs. McCamant, Bronaugh & Thompson,* with oral arguments by *Mr. Kollock* and *Mr. Wallace McCamant.*

BROWN, J.—1. The legal status of an irrigation district has been brought in question in this controversy.   An irrigation district organized under the Irrigation District Law of this state is a municipal corporation, its property public property, and its officers public officers, elected by the legal voters of the irrigation district, with duties and powers fixed and limited by the law of their creation.   Such a district "is created for a public purpose and it rests in the discretion of the legislature when to create it and with what powers to endow it." *Fallbrook Irrigation Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes). Among other things, the title of the act provides for the "government of irrigation districts," and the body of the act carries out the purpose expressed in

the title. The legislative assembly considered an irrigation district organized under the Irrigation District Law to be a municipal corporation: Laws 1895, p. 13; Laws 1917, p. 743; *Rathfon* v. *Payette District,* 76 Or. 606, 610 (109 Pac. 1044); *Grieg* v. *Owyhee Irrigation District,* 102 Or. 265 (202 Pac. 222).

Oregon, as well as other western states, took its Irrigation District Act from California. The decisions of the courts for these states are of great value in the construction of this act.

In *People* v. *Cardiff Irrigation District,* 51 Cal. App. 307 (197 Pac. 384, 387), the Supreme Court of California said:

"It is no longer open to doubt that the legal status of an irrigation district is that of a municipal corporation. Although its duties and powers are of narrower scope in the subjects of their action than in the case of a city or other general municipal organization, nevertheless, the affairs concerning which such district does act are those 'of a public corporation to be invested with certain political duties which it is to exercise in behalf of the state.'"

Another court has written:

"An irrigation district is a municipal corporation, and its property is public property and * * is not the subject of a mechanic's lien." *Storey & Fawcett* v. *Nampa and Meridian Irrigation District,* 32 Idaho, 713 (187 Pac. 946), Syl.

Again, the question as to whether an irrigation district is a municipal corporation within the meaning of Section 6, Article VII, of the Constitution of Idaho, prohibiting the legislature from imposing taxes for the purposes of a municipal corporation, arose in *Gem Irrigation District* v. *Van Deusen,* 31 Idaho, 779 (176 Pac. 887). In that case, the court said:

"An irrigation district is a municipal corporation within the meaning of the foregoing constitutional provision. *Pioneer Irrigation District* v. *Walker,* 20 Idaho, 605 (119 Pac. 304); *Ferbrache* v. *Drainage Dist. No. 5,* 23 Idaho, 85 (128 Pac. 553, Ann. Cas. 1915C, 43, 44 L. R. A. (N. S.) 538; *Brown Bros.* v. *Columbia Irr. Dist.,* 82 Wash. 274 (144 Pac. 74)."

In *Brown Bros.* v. *Columbia Irr. Dist., supra,* it was held that an irrigation district is a municipal corporation within the meaning of the statute relative to taking a bond for public works.

In the case of *Peters* v. *Union Gap Irr. Dist.,* 98 Wash. 412 (167 Pac. 1085), it was held that the irrigation district is a municipal corporation with such powers as are conferred upon it by statute.

In *State* v. *Columbia Irr. Dist.,* 121 Wash. 79 (208 Pac. 27), the court held that an irrigation district is a municipal corporation as respects its contracts.

Also see *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 (198 Pac. 1060, 17 A. L. R. 72).

For the purpose of all points discussed in this opinion, the defendant Ochoco Irrigation District must be treated as a municipal corporation.

The plaintiff maintains that the defendant is estopped from asserting the invalidity of its contract because of the provisions of Section 41, Chapter 357, Laws of 1917, re-enacted as Chapter 390, Laws of 1919, and appearing in Oregon Laws as Sections 7358, 7359 and 7360.

We will briefly refer to the history of our Irrigation District Law, including the "Confirmation Act."

The Irrigation District Law was adopted in this state by the legislative assembly of 1895 (see page 13, Gen. Laws of Oregon, 1895). This law, in substance, was a copy of the irrigation law of the state of California known as the "Wright Act," together with its

amendments.   The ''Confirmation Act'' is likewise of Californian origin.

3 Kinney on Irrigation and Water Rights (2 ed.), § 1390, says:

''The now famous irrigation district law of California, familiarly known as the 'Wright Law' was enacted in 1887.   Mr. Wright, the author of the bill, * * was sent to the legislature for the express purpose of having such a law enacted.   The original 'Wright Law' was amended by the legislature at every session thereof, after the same was enacted, until the session of the legislature of 1897.   The Act of 1889, relating to the confirmation of these organizations and commonly designated as the 'Confirmation Act,' although entirely an act supplemental to the original 'Wright Act,' in law forms no part of the original act.   It was an act creating a special proceeding for the determination of the validity of the acts authorized by the statute to be performed. In 1897, the original act and its amendments were repealed and a new and complete similar act sometimes called the 'Bridgeford Act,' or the 'Wright-Bridgeford Act,' substituted in its place.''

This latter act has since been amended, and, as amended, was adopted in 1911 by this state as a part of the Irrigation District Law.   In 1917 it was revised and re-enacted as Section 41, Chapter 357, General Laws of Oregon for that year.   This section, however, was repealed and re-enacted as a separate statute by Chapter 390, General Laws of Oregon, 1919.

2.   The scope of a judgment of confirmation by the Circuit Court of the proceedings in the organization or subsequent acts of such district may include:

A judicial examination and judgment of the court as to regularity and legality of the following matters:

1. The organization proceedings.

2. The issue and sale of the bonds of the district.

3. The order of the County Court declaring the organization of the district.

4. The declaration of the result of any district election.

5. Order of the board including in, or excluding lands from, the district.

6. The order of such board levying any assessment.

7. The issue of any bonds, or determining any bond issue.

8. The legality of proceedings authorizing a contract with the United States.

Mr. Kinney states the reason for the "Confirmation Act" as follows:

"The objects of these provisions are to provide a security for investors, prevent fraud, and to promote the advantage of the irrigation districts by enabling them to secure a decree as to the validity of issued bonds, which will be binding upon all the world. It has also been found from experience that bonds will sell for a much better price where their validity has been confirmed by the court. The confirmation proceeding is denominated in the acts as a special proceeding, and it is clearly in the nature of an action *in rem,* the object being to determine the status of the district, and its power to issue valid bonds." 3 Kinney on Irrigation and Water Rights (2 ed.), pp. 2561, 2562, and see numerous authorities cited under note 5.

Section 14 of the original Irrigation District Act (Section 7318, Or. L.), which provides that an irrigation district may defend, is in point. It declares:

"The said board is hereby authorized and empowered * * to institute and maintain any and all actions and proceedings, suits at law or in equity, necessary or proper, in order to fully carry out the provisions of this act, or to enforce, maintain, protect or preserve any and all rights, privileges and immunities created by this act or acquired in pursuance

thereof; and in all courts, actions, suits or proceedings the said board may sue, appear and defend, in person or by attorney, and in the name of such irrigation district."

This provision has been preserved in its entirety in all subsequent revisions of the irrigation district law. The following words have been added thereto:

"The court shall, in all actions or suits or other proceedings, take judicial knowledge of the organization of, and boundaries of, all irrigation districts which have been heretofore, or may be hereafter, organized under the provisions of this act."

3. That the district has the right to defend itself in the present suit and to assert the invalidity of the contract involved herein cannot be questioned.

This case involves the application of the following sections of the Irrigation District Act:

Laws of 1895, page 18, Section 11 (L. O. L., § 6178), Laws 1915, Chapter 189, Section 4, which reads:

"The board shall have the power, and it shall be their duty to manage and conduct the business and affairs of the district; make and execute all necessary contracts; employ and appoint such agents, officers, and employees as may be required, and to prescribe their duties; * * and generally to perform all such acts as shall be necessary to fully carry out the purposes of this act."

Laws of 1895, page 19, Section 12 (L. O. L., § 6179), as amended by Section 5, Chapter 189, Laws of 1915, permitting the use of the bonds, at par value, by the board, for the purposes of making payments due a contractor on construction. This Section reads in part:

"Said board may also construct, or contract for the construction of the necessary canals, dams, reservoirs, pumping plants and other necessary works for the

collection and distribution of water in, and for the drainage of said district, and may do any and every lawful act necessary to be done that water may be furnished for the lands in said district for irrigation purposes * * . In case of construction by the district of any canals, dam, reservoir, pumping plant, power plant, or other necessary work for the collection and distribution of water, or in case the district contracts for the construction thereof, the bonds of the district may be used at par value in payment thereon and may be delivered by the board of directors at such times and in such amounts as may be necessary to enable the district to carry on such construction, or make the payments due by it under said contract.''

Laws of 1895, page 29, Section 37 (L. O. L., § 6206), as amended by Section 11, Chapter 223, Laws of 1911, calling for competitive bids, in the following language:

"After adopting a plan for said canal or canals, storage reservoirs and works, the board of directors shall give notice, by publication thereof not less than once a week for three successive weeks in one newspaper published in each of the counties composing the district (provided a newspaper is published therein) and in such other newspaper as they may deem advisable, calling for bids for the construction of such works, or of any portion thereof; if less than the whole work is advertised, then the portion so advertised must be particularly described in such notice. Said notice shall set forth that plans and specifications can be seen at the office of the board, and that the board will receive sealed proposals therefor, and that the contract will be let to the lowest responsible bidder, stating the time and place for opening said proposals, which, at the time and place appointed, shall be opened in public; and as soon as convenient thereafter the board shall let said work, either in portions or as a whole, to the lowest responsible bid-

der; or they may reject any or all bids and readvertise for proposals, or may proceed to construct the work under their own superintendence. Contracts for the purchase of materials shall be awarded to the lowest responsible bidder.''

To the section last quoted, the following amendment was made by Section 10, Chapter 189, Laws of 1915:

''Provided that the provisions of this section shall not apply in the case of contract between the district and the United States.''

Laws of 1895, page 22, Section 16 (L. O. L., § 6184), relates to the sale of bonds for cash.

The above proviso in the matter of contracts with the United States, written into the statute by the legislative assembly of 1915, is the only exception contained in the act relating to public notice, and hence is illuminating in construing the act.

The construction placed upon the above sections of the irrigation district law by the directors of Ochoco Irrigation District has been invoked by plaintiff.

4. It is settled law that in cases of doubt and ambiguity, the courts may consider an executive construction of a statute. But whenever the words of the law are clear and the true meaning evident on the face of the act, there is never any room for construction: Black on Interpretation of Laws, §§ 89 and 90; 2 Lewis' Sutherland Statutory Construction, § 473.

''Usage is only the interpreter of an obscure law, but cannot control the language of a plain one.'' Endlich, Interpretation of Statutes, 501.

5. The law under consideration is a state statute, and in order to constitute general usage and practical

construction, the interpretation placed thereon must be general and not local.

A law applicable to the entire state cannot receive different interpretations in different localities: 2 Lewis' Sutherland Statutory Construction, § 473; Endlich, Interpretation of Statutes, § 362.

The existence of a contemporaneous construction placed upon a statute is a matter of law.

"The court will take judicial notice thereof, or will inform itself by any proper and available means." Black on Interpretation of Laws, § 88.

If the section of the irrigation district law providing for advertising for bids is directory, the observance thereof in executing the contract herein is not necessary to its validity; but if mandatory and jurisdictional, the failure to follow its provisions renders the contract invalid: Black on Interpretation of Laws, § 123; 36 Cyc. 1159. The language of this section of the statute does not confer privileges, but, upon the other hand, imposes duties upon the board of directors.

6. It is a familiar precept that in construction of statutes, effect, when possible, shall be accorded to every section, clause, phrase or word of the legislative act.

"Obviously, in order that effect may be given to every part of an act in accordance with the legislative intent, all the language of the act must be considered and brought into accord." 25 R. C. L., § 247.

The statute prescribes but one method of contracting. The manner of letting a contract under the act is as follows:

"After adopting a plan for said canal, * * storage reservoirs and works, the board of directors shall give notice by publication * * , for the construction

of such works * * ; said notice shall set forth that plans and specifications can be seen at the office of the board * * ; the board shall let said work * * to the lowest responsible bidder; or they may reject * * all bids and readvertise for proposals."

These prerequisites having been performed, the section empowers the board of directors to exercise the right conferred as the result of the notice and the failure to secure a satisfactory bid, by providing that they "may proceed to construct the work under their own superintendence."

This section of the statute plainly provides the mode of letting a contract for the construction of irrigation works. It clearly expresses the conditions precedent to the awarding thereof. It likewise prescribes the essentials under which the board may proceed to construct the works under their own superintendence.

In *Scott* v. *Ford,* 52 Or. 288, 296 (97 Pac. 99), in referring to this rule of construction, "The expression of one thing is the exclusion of another," the court adopts the following from 19 Cyc. 26:

"Whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative; viz., that the thing shall not be done otherwise."

This maxim is applied by Sutherland:

"Enabling statutes, on the principle of *expressio unius est exclusio alterius,* impliedly prohibit any other than the statutory mode of doing the acts which they authorize." 2 Lewis' Sutherland Statutory Construction, § 627.

See, also, 36 Cyc. 1122; 25 R. C. L. 982; *State* v. *Tucson Gas etc. Co.,* 15 Ariz. 294 (138 Pac. 781); *New Haven* v. *Whitney,* 36 Conn. 374, 375; *District*

*Twp.* v. *Dubuque,* 7 Iowa, 262, 265; *Dalton* v. *Murphy,* 30 Miss. 59; *Veazie* v. *China,* 50 Me. 518; *Wendel* v. *Durbin,* 26 Wis. 390; *Beltzhoover* v. *Gollings,* 101 Pa. St. 293.

"What the law requires for the protection of the taxpayer * * is mandatory and cannot be regarded as directory merely." 2 Lewis' Sutherland Statutory Construction, § 628.

The State of Utah has an irrigation district law much like our own. This act referred to repeals the former irrigation district law and enacts in lieu thereof Chapter 68, Laws 1919, "for the organization and government of irrigation districts, and to provide for the acquisition or construction of works * * ." At Section 11 it is provided, among other things, that:

"The board shall have the power to contract for the purchase of a system of irrigation thereafter to be constructed, construct, purchase, condemn, or otherwise acquire, when necessary for the use of the district, any and all canals, ditches, reservoirs, reservoir sites, lands necessary or incidental to the use and operation of irrigation works."

Section 15 provides the procedure for the sale and use of the bonds of the district. This section reads, in part, as follows:

"In case no bid is made and accepted as above provided the board of directors, subject to the approval of the state board of certification, is hereby authorized to use said bonds for the purchase of canals, reservoir sites, reservoirs, water rights and works, stock of irrigation, canal, or reservoir companies, or for the construction of any canal, reservoir and works, or otherwise fully to carry out the purposes of this act; provided such bonds shall not be disposed of at less than 95% of the face value thereof."

Section 22 provides for advertising for bids for the construction of the works referred to in the foregoing, or any portion thereof. The language is almost a duplicate of the Oregon statute in reference to publishing notice for bids and for construction under its own superintendence. This statute is applied in the case of *Bonneville Irr. Dist.* v. *Ririe, State Auditor,* 57 Utah, 306 (195 Pac. 204), wherein the plaintiff, in an original proceeding, sought the mandate of the court to compel Ririe, as state auditor, to certify to certain bonds authorized and issued by it, which the district had contracted to use in payment of construction work. The complaint alleges that the district was organized under the provisions of Chapter 68, Laws of Utah, 1919, hereinbefore alluded to. The plaintiff avers its proceedings, through its officers, leading up to the authorization of bonds; the advertisement for bids for the sale of the bonds of the district; the lack of bids; that following failure to secure bids

"the plaintiff entered into a contract with a construction company, by the terms of which such construction company agreed to furnish all labor and material for the construction of the irrigation system designated by the plaintiff, and in consideration of which the district agreed to pay and the construction company agreed to accept in payment of such material and labor the bonds of said district at 95% of their par value."

In its opinion the court, reviewing the provisions of the statute, particularly Sections 15 and 22, held, that the auditor, who had refused to certify to the bonds because of the provisions contained in section 22 of the irrigation district law of Utah, providing for the letting of contracts for the furnishing of work and

material for the construction of the irrigation system of the plaintiff, was right.   The court says:

"We are clearly of the opinion that the position of the defendant is right. Manifestly, the very purpose and object of requiring a notice asking for competitive bids in section 22 and directing that the contract shall be awarded to the lowest bidder, is to procure the most advantageous contract possible for the district, and that is so regardless of whether the payment for the work and material is to be by bonds of the district or by money received from the sale of the bonds."

The court further held that the district itself would not be permitted to do the work prior to its calling for competitive bids.

The Nebraska Irrigation District Law is likewise similar to our own, and confers like powers and duties upon the board of directors. In *Lincoln etc. Irr. Dist.* v. *McNeal,* 60 Neb. 613 (83 N. W. 847), the Supreme Court of that state held that under the provisions of the Irrigation District Law the work must be advertised for by publication of notice and the bids received under such notice either accepted or rejected before the board is authorized to proceed with the construction work under its own superintendence. To like effect is 3 Kinney on Irrigation and Water Rights (2 ed.), § 1424.

If the law-making body of this state had intended that the bonds of the district might be used in payment for labor and material without advertising for bids for construction contracts, it would have said so.   The legislature of the State of Washington made such provision in its Irrigation Code.   See Section 6450, Remington Code of 1915, as amended by the addition of two exceptions, one of which reads:

"Provided that the provisions of this section in regard to public bidding shall not apply in cases where the board is authorized to exchange bonds of the district in payment for labor and material."

The Irrigation District Law relating to the mode of doing construction work is not unlike the statute of this state providing for the building of bridges by counties. Under our statute the County Court has the authority—

"to provide for the erection * * of public bridges upon any road or highway established by public authority." Or. L., § 937, subd. 4.

Also,

It is further provided that "The county courts of the several counties of this state are * * authorized to apply, in their discretion, any money in the county treasury not otherwise appropriated, toward defraying the expense of building * * bridges on any of the county or state roads." Or. L., § 4717.

Now as to the mode: Whenever a bridge is to be erected, the cost of which shall exceed the sum of $500, the County Court must advertise for sealed bids. If such bids are unsatisfactory, it may reject any or all bids received, and may, in its discretion, employ a suitable superintendent and assistants and procure the necessary material and cause such bridge to be constructed: Or. L., § 4719.

7. The statute requiring advertising for bids, under each law, is not permissive, but mandatory.

8. Furthermore, contractors dealing with irrigation districts are charged, at their peril, with knowledge of the authority of the board of directors. Both parties know the law. The statute defining the extent of the powers of the directors is a general act.

Irrigation district directors, being public officers, are held more strictly within the express limitation of their authority than are officers of a private corporation: Tiedeman, Municipal Corporations, § 170. The following defines a mandatory statute:

"When a fair interpretation of a statute which directs acts or proceedings to be done in a certain way shows that the legislature intended a compliance with such provisions to be essential to the validity of the act or proceeding, or when some antecedent and prerequisite conditions must exist prior to the exercise of power, or must be performed before certain other powers can be exercised, then the statute must be regarded as mandatory." 36 Cyc. 1158, 1159.

The district had no right to disregard the plain provisions of the law in contracting, because—

"Mandatory statutes are imperative; they must be strictly pursued; otherwise a proceeding which is taken ostensibly by virtue thereof will be void." 2 Lewis' Sutherland Statutory Construction, § 627.

"Those dealing with these officials are chargeable with knowledge of the limitations upon their power to contract, and where they transgress the powers their acts are void and will bind no one. * * Nor may a contractor rely upon a claim by him that the public officials have frequently before made similar transactions, for however common such occasions they cannot establish a usage in cases not authorized. Custom cannot be made to substitute for undelegated authority. And the receipt of the benefits will not imply a promise." Donnelly, The Law of Public Contracts, § 11.

Again, this author, in his valuable treatise, says:

"When a statute confers on a public officer the power to enter into a contract and requires the officer to advertise for bids before making the contract, such advertising is a condition precedent to the grant of authority and without the advertising there is no authority. Hence any contract not made through

advertising for bids, when so required, is void."
Donnelly, The Law of Public Contracts, § 112.

Construction contracts are invalid when not let
as prescribed in accordance with the mandatory pro-
visions of the Irrigation District Law: *Terwilliger
Land Co.* v. *Portland,* 62 Or. 101, 106 (123 Pac. 57);
*Temple* v. *Portland,* 77 Or. 559, 566 (151 Pac. 724);
*Montague-O'Reilly* v. *Milwaukie,* 101 Or. 478, 491,
492 (193 Pac. 824, 199 Pac. 605).

"A provision in a charter, statute or ordinance
requiring a contract to be let by competitive bidding
is mandatory, and unless complied with the con-
tract is void." 28 Cyc. 1025.

The following statement contained in 20 Am. & Eng.
Ency. of Law (2 ed.), page 1165, has been cited by
the courts many times with approval:

"The general rule is that a provision with reference
to the letting of contracts on bids is mandatory and
essential to the validity of contracts entered into, in
the absence of which no liability is imposed even
though fully performed by the other party thereto
and substantial benefits are conferred on the city."

Also see the authorities there cited under notes
7 and 8.

"If the statute," says a text-writer, "requires com-
petitive bidding, a contract which is not let upon com-
petitive bidding is invalid." 3 Page on the Law of
Contracts, § 1936; also authorities under note 2.

The same author states, at Section 1946:

"The statutes often require the contract to be let
after advertising, to the 'lowest,' the 'lowest and
best,' or the 'lowest responsible' bidder. A contract
let without complying with this requirement is unen-
forceable."

Again, quoting from the same authority at Section
1962:

" * * If the contract is in violation of a mandatory statute, and is contrary to public policy, no recovery can be had either on the contract or on *quantum meruit.*"

Also see authorities cited in support thereof under note 7.

The law, as laid down by text-writers and court decisions, is that—

"When the municipal authorities are required by statute to award contracts to the lowest bidder, a contract not so awarded is illegal and its illegality may be pleaded by the city in an action brought thereon. * * If notice, advertising and similar preliminaries are required by statute, neither the corporation nor any of its officials can make a valid contract which shall bind the corporation unless the statute is rigidly complied with." Tiedeman, Municipal Corporations, § 172.

To the same effect is 1 Beach on Public Corporations, Section 250, and numerous authorities there cited.

A standard authority on municipal law has written:

"Where the charter or incorporating act requires the officers of the city to award contracts to the lowest bidder, a contract made in violation of its requirements is illegal, and in an action brought on such contract for the work the city may plead its illegality in defense; and neither the municipality nor its subordinate officers can make a binding contract for such work except in compliance with the requirements of the law." 2 Dillon, Municipal Corporations, 801.

"Where competitive bidding is required by a valid provision in a statute * * , the provision is mandatory and must be fully complied with or else the contract will be invalid and unenforceable against the municipality. This proposition has been decided in one phase or another in a multitude of cases." 3 McQuillin, Municipal Corporations, § 1185. See numerous cases cited under note 47.

In his supplement to the above work, the author has said:

"The purpose of requiring bids is to guard against favoritism, improvidence, extravagance and corruption in the awarding of municipal contracts, and these requirements should be so construed and administered as to accomplish such purpose fairly and reasonably. The requirement of competitive bidding in the letting of municipal contracts is uniformly construed as mandatory and jurisdictional, and nonobservance will render the contract void and unenforceable." 7 McQuillin, Municipal Corporations (Supp.), §§ 1184, 1185; citing the following additional authorities. *Seysler* v. *Mowery,* 29 Idaho, 412 (160 Pac. 262); *Williams* v. *Topeka,* 85 Kan. 857 (118 Pac. 864, Ann. Cas. 1913A, 497, 38 L. R. A. (N. S.) 672); *McGovern* v. *Trenton,* 84 N. J. L. 237 (86 Atl. 539, 541); *Atkinson* v. *Webster City,* 177 Iowa, 659 (158 N. W. 473, 479); *Arthur* v. *Petaluma,* 27 Cal. App. 782 (151 Pac. 183); *Lincoln* v. *Thompson,* 190 Ill. App. 536; *Hoosier Construction Co.* v. *Seibert,* 63 Ind. App. 594 (114 N. E. 981, 984); *Edwards* v. *Cooper,* 168 Ind. 54 (79 N. E. 1047); *Arpin* v. *Thief River Falls,* 122 Minn. 34 (141 N. W. 833); *Thresher* v. *Kirkville* (Mo. 1918), 204 S. W. 804; *Lewis* v. *Philadelphia,* 235 Pa. 260 (84 Atl. 33); *Philadelphia Co.* v. *Pittsburg,* 253 Pa. 147 (97 Atl. 1083); *Dolan* v. *Schoen,* 261 Pa. 11 (104 Atl. 149); *Will* v. *Bismark,* 36 N. D. 570 (163 N. W. 550); *Flynn* v. *Philadelphia,* 258 Pa. 355, 361 (102 Atl. 24).

9. It should be deemed to be settled law in this state that under an ordinance or statute requiring competitive bids for public contracts, that mode is exclusive and must be followed, or else the contract is void: *Springfield Milling Co.* v. *Lane County,* 5 Or. 265, 267; *Grafton* v. *City of Shellwood,* 24 Or. 118, 120 (32 Pac. 1026); *Terwilliger Land Co.* v. *Portland, supra; Montague-O'Reilly* v. *Milwaukie, supra.*

Also see *Watson* v. *City of Salem,* 84 Or. 666, 670 (164 Pac. 567, 1184).

"Statutes providing for competitive bidding * * are enacted for the benefit of property holders and taxpayers of the municipalities, and not for the benefit of contractors and bidders." 1 Elliott, Roads and Streets (3 ed.), § 638.

Nearly half a century ago this court announced the reason for the rule requiring competitive bidding by declaring:

"This mode of proceeding prevents jobbery and favoritism, and such was the manifest intention of this provision of the statute." *Springfield Milling Co.* v. *Lane County, supra.*

To similar effect is *Terwilliger Land Co.* v. *Portland, supra.* Other courts assign like reasons. See *McGovern* v. *Trenton,* 84 N. J. L. 237 (86 Atl. 539, 541).

The purpose of such provisions as the section requiring competitive bidding is "to safeguard public funds and prevent favoritism, fraud and extravagance in their expenditures"; *Seysler* v. *Mowery,* 29 Idaho, 412 (160 Pac. 262); "to insure competition in letting contracts for such improvements, to protect the taxpayers and the public." *Williams* v. *Topeka,* 85 Kan. 857 (118 Pac. 864, Ann. Cas. 1914A 497, 38 L. R. A. (N. S.) 672).

"The restrictive provisions of the statute were evidently inserted for the protection and benefit of the public and were intended to guard against favoritism, extravagance or corruption in the letting of contracts for any public work. * * And when the law prescribes the mode which they must pursue in the exercise of these powers, it excludes all other modes of procedure." *Saddler* v. *Eureka County,* 15 Nev. 39.

"Experience has shown that this policy is necessary to prevent abuses and protect the public treasury from depletion by unscrupulous public officers." *Buchanan Bridge Co.* v. *Campbell,* 60 Ohio, 416, 420 (54 N. E. 372).

"The act (requiring competitive bidding) was designed to remedy an existing evil. Its provisions are not formal but material and substantial. *Peck-Williamson Heating & V. Co.* v. *Steen Township,* 30 Ind. App. 637 (66 N. E. 909, 910).

To like effect is *La France Co.* v. *Syracuse,* 33 Misc. Rep. 516 (68 N. Y. Supp. 894, 896).

For the purpose of sustaining its cause the plaintiff has cited two Oregon cases, viz., *Ward* v. *Forest Grove,* 20 Or. 355 (25 Pac. 1020), and *Tone* v. *Tillamook City,* 58 Or. 382 (114 Pac. 938). These cases are not out of harmony with the decisions of this court noted above. In the case of *Ward* v. *Town of Forest Grove, supra,* the plaintiff rendered services as physician, in the care of smallpox patients, at the instance of the officers of the city and "with their full knowledge and consent" while acting within the scope of their prescribed duty. The following excerpt from the opinion of the court is enlightening:

"This is not a case where the officers of the corporation have exceeded their authority, nor is it a case where the mode of contracting is specially prescribed and limited by the charter."

In the case of *Tone* v. *Tillamook City, supra,* the city acquired a right of way across the grantor's land, to lay a pipe-line for the purpose of carrying water. A consideration therefor was the right of the grantor to take a limited amount of water from the pipe-line of the municipality. In rendering the opinion, Mr. Justice McBride said:

"The covenant that the grantors * * were to have the right to take free a certain quantity of water was a consideration for the deed, perhaps the main consideration, and until defendant abandons or offers to reconvey the right of way granted, it cannot be heard to say that its contract was *ultra vires,* unless there is shown some provision of its charter absolutely or by necessary implication prohibiting it from so contracting."

This case is in line with the holdings of many courts to the effect that when property has been sold to a municipality under a contract which is *ultra vires* and payment is denied, such property may be recovered whenever it can be removed without serious injury or inconvenience to the public: 3 Page on Contracts, § 1959. In the Tone case the court carefully points out that the transaction was not contrary to any provision of its charter, while in the case at bar the contract is palpably contrary to the mandatory statute requiring advertisement for bids. The Tone case does not overrule the earlier Oregon cases hereinbefore cited, nor does its holding conflict with the doctrine there announced and upheld in the later Oregon cases above referred to.

The statute expresses the ruling public policy of the state with reference to contracting with irrigation districts.

The law of the case at issue is well settled in this jurisdiction. The decisions are in harmony. The law means what it says. Its commands must be obeyed. This court is powerless to annul a valid statute, even though its application may seem harsh. The plaintiff knowingly made the situation. It contracted in violation of law.

10. The plaintiff argues that the contract has been ratified by the municipality. Many decisions hold that a void contract cannot be ratified. Such is the general doctrine. The district could not ratify the contract without complying with the imperative provisions of the statute, and this it never did.

"If a public corporation has power to ratify a contract, it can ratify it only by acts as formal as those which were necessary to enter into the original contract in the first instance." 3 Page on The Law of Contracts, § 1967; citing *Astoria* v. *American La France Fire Engine Co.,* 225 Fed. 21 (139 C. C. A. 80); *McCracken* v. *San Francisco,* 16 Cal. 591; *Durango* v. *Pennington,* 8 Colo. 257 (7 Pac. 14).

To like effect is *Cross* v. *Mayer, etc.,* 18 N. J. Eq. 305. Another text-writer has thus stated the formula:

"When a mandatory mode of execution of a contract is prescribed by statute, the act of ratification of an unauthorized contract must comply with the provisions of the statute regulating the manner of entering into the original contract." 1 Smith, Municipal Corporations, § 261.

To similar effect is Tiedeman, Municipal Corporations, 170. The editors of Ruling Case Law have written:

"It is clear that the attempted ratification by a municipal corporation of a contract which it has no power to enter into is ineffectual and cannot render the contract a binding obligation. So also when the mode in which a municipal corporation may act on any given subject is prescribed by its charter, the mode must be followed, and no action not taken in the prescribed mode can be ratified in disregard of that mode by any subsequent action of the corporate authorities. * * For this reason, when a contract is invalid because of the failure to comply with

certain essential preliminary requirements of law, the contract cannot be ratified by the municipality unless such requirements are complied with.'' 19 R. C. L., pp. 1074, 1075; citing in support of the last proposition as to manner of ratification: *Indianapolis* v. *Wann,* 144 Ind. 175 (42 N. E. 901, 31 L. R. A. 743); *Gutta Percha etc. Mfg. Co.* v. *Ogalalla,* 40 Neb. 775 (59 N. W. 513, 42 Am. St. Rep. 696, and note); *Chippewa Bridge Co.* v. *Durand,* 122 Wis. 85 (99 N. W. 603, 106 Am. St. Rep. 931); note L. R. A. 1915A, 1026, 1027.

11.   The district is not liable to the plaintiff upon an implied contract. In the case of *Springfield Milling Co.* v. *Lane County, supra,* this court said, at page 267:

''The general doctrine unquestionably is that when one receives the benefit of another's work or property, he is bound to pay for the same, and this doctrine applies as well to corporations as to individuals in cases where there is no restriction imposed by law upon the corporation against making in direct terms a contract like the one sought to be implied; but where there exist legal restrictions which disable a corporation to agree in express terms to pay money, the law will not imply any such agreement against the corporation. (*Brady* v. *Mayor,* 2 Bosworth 173; *Zottman* v. *San Francisco,* 20 Cal. 102–105 [81 Am. Dec. 96].) This rule may sometimes work a hardship upon a contractor who, without having considered whether the law has been complied with or not, has performed labor or furnished material for a public corporation, and expects compensation therefor, the same as if it had been done or furnished for a private individual. But, nevertheless, the authorities hold that a contractor, no less than the officers of a muncipal corporation, when dealing in a matter expressly provided for by law, must see to it that the law is complied with. Where work is done without authority, upon the streets of a city, liability does not follow because the streets may

be improved thereby or their use continued. Such continued use constitutes no such evidence of acceptance as to create a liability against the corporation (20 Cal. 107).''

The opinion in the case of *Zottman* v. *San Francisco,* 20 Cal. 102 (81 Am. Dec. 96), referred to in the foregoing quotation, was rendered by Fields, C. J., and has been cited with approval over and over again by courts and text-writers. Among the many decisions supporting the doctrine announced by this court in the Springfield Milling Co. case is *Reams* v. *Cooley,* 171 Cal. 150 (152 Pac. 293, Ann. Cas. 1917A, 1260). This case is the subject of a note therein, reading:

''As a general rule, there is no implied liability on the part of a municipality under a contract let contrary to a statute requiring competitive bidding, though the municipality has received the benefit of performance by the other party.'' See list of cases there cited.

In 27 L. R. A. (N. S.), pp. 1117–1130, is a valuable note where many authorities are collected supporting the proposition that—

''A municipality or other public corporation having general power to contract with reference to the subject matter of an express contract invalid for some irregularity in the execution thereof, is liable upon an implied contract for any benefit received thereunder where the form or manner of letting or execution does not violate any statutory restriction upon the power of such corporation to contract, and it is not otherwise violative of public policy.''

To this doctrine just stated, we assent. However, under the facts in the instant case, it does not apply. In the same note (pp. 1120, 1121), the editor states the rule that does apply, viz.:

"By the great weight of authority, where by statute the power of a municipality or other public corporation to make a contract is limited to a certain manner and under certain circumstances, and any other manner of entering into a contract, agreement or obligation is expressly or impliedly forbidden, no implied liability can arise against the municipality for benefits received under a contract within the scope of such statute and violative thereof." Citing numerous authorities, including *Springfield Milling Co.* v. *Lane County, supra.*

The books contain many illustrative cases, such as *Bartlett* v. *Lowell,* 201 Mass. 151 (87 N. E. 195), where gravel was sold and used in a city street; *Chippewa Bridge Co.* v. *Durand,* 122 Wis. 85 (99 N. W. 603, 106 Am. St. Rep. 931); *Reams* v. *Cooley, supra,* involving work on schoolhouse; *Nichols* v. *State,* 11 Tex. Civ. App. 332 (32 S. W. 452), labor and material upon a public building, and *Montague-O'Reilly* v. *Milwaukie, supra,* the paving of streets.

12. Defendant's suit in Crook County against the plaintiff, set forth in the reply on file herein, does not estop the defendant in this cause. The pleadings do not inform us as to whether or not a hearing was ever had or any judgment rendered in that cause. It is elementary that a pleading is to be construed most strongly against the pleader. A well-established rule is that no intendments are made in favor of a plea of estoppel and it is incumbent on the pleader to state all the facts essential to the existence of an estoppel: *Hoosier Construction Co.* v. *Seibert,* 63 Ind. App. 594 (114 N. E. 985). See 21 C. J., pp. 1223–1226. The presumption is that no judgment was ever rendered in that cause. The editors of Ruling Case Law say:

"The principles governing election of remedies are necessarily based upon the supposition that two or more remedies exist. If in fact or in law only one remedy exists, there can be no election by the pursuit of another and mistaken remedy. It is a well-established rule that the choice of a fancied remedy that never existed and the futile pursuit of it, either because the facts turn out to be different from what the plaintiff supposed them to be, or the law applicable to the facts is found to be other than supposed, though the first action proceeds to judgment, does not preclude the plaintiff from thereafter invoking the proper remedy. * * Even where a party has pursued a remedy which would have entitled him to some relief, and later had discovered facts which disclose a better remedy, he may follow the better remedy if no such conditions of injury amounting to an estoppel have resulted to the other party." 9 R. C. L., pp. 962, 963.

We conclude by adopting the following from the case of *Buchanan Bridge Co.* v. *Campbell,* 60 Ohio, 419 (54 N. E. 374), wherein a bridge contract was let without advertising for bids. The court said, at pages 419–426:

"Whatever the rule may be elsewhere, in this state the public policy * * is, that to bind the state, a county or city for supplies of any kind, the purchase must be substantially in conformity to the statute on that subject, and that contracts made in violation or disregard of such statutes are void,— not merely voidable,—and that courts will not lend their aid to enforce such a contract directly or indirectly, but will leave the parties where they have placed themselves. * * The manner of purchasing, contracting for, and erecting a bridge by county commissioners, is regulated and controlled by statute, and nothing is left to inference. * * The statutes are notice to the world as to the extent of the powers of the commissioners, and the bridge company is bound by that notice. * * The plaintiff, seeing that

the contract must be held to be void, seeks to recover on the ground that the commissioners received and retained the bridge and promised to pay what it is reasonably worth. * * The answer to this is that the commissioners have no power to bind the county in that way, and to allow such a course to be pursued would permit the evasion of the statutes.''

In this case, the defendant has paid the plaintiff over $300,000 for labor and material used in the construction of its canal and dam. According to plaintiff's allegations, a large sum remains due and unpaid. Fair dealing would seem to demand payment or a return of that which was furnished and unpaid under the alleged contract. However, a return cannot be had. Nor can we hold that the reasonable value of the material and services supplied may be collected by the plaintiff from the defendant, for that would destroy the effect of a statute declaratory of the state's public policy and enacted by the legislature for the protection of property holders and taxpayers. The big fact in this case is that it involves the public policy of the state. That policy is lawful and must be sustained, regardless of the plaintiff's claim as to the sum owing it. The principle of law is the same, whether the amount involved be one hundred, or one hundred thousand, dollars.

This case is affirmed.                    Affirmed.

Burnett, C. J., not sitting.

Former opinion sustained on rehearing June 12, 1923.

## On Rehearing.

(216 Pac. 189.)

For appellant there was a brief over the names of *Mr. James G. Wilson* and *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. E. B. Seabrook.*

For respondent Ochoco Irrigation District there was a brief over the names of *Mr. John K. Kollock* and *Messrs. McCamant & Thompson,* with oral arguments by *Mr. Kollock* and *Mr. Wallace McCamant.*

McCOURT, J.—Counsel for plaintiff presented a petition for rehearing, in which they confidently urged that a municipal corporation, when acting in its proprietary capacity, is liable upon implied contract, for benefits received in the performance of a contract entered into in violation of statutory restrictions upon its power to contract, contrary to the general rule which prevails in respect to such corporations in the exercise of governmental powers.

In view of the large sum involved in this controversy and the public importance of the question suggested by plaintiff's contention, a rehearing was granted. The argument upon rehearing was confined to the proposition above stated.

Plaintiff does not claim that the defendant irrigation district has power to contract for the construction of irrigation works, otherwise than by letting the contract to the lowest responsible bidder, after advertising for bids as prescribed and required by the statute under which such irrigation district was created. They concede that the contract under which

plaintiff herein furnished the services for which recovery is sought, is void because of noncompliance with those statutory requirements.

That the statutory requirements mentioned were mandatory and essential to the jurisdiction and power of the district to contract for such construction, as declared in the former decision herein (210 Pac. 873), is not questioned. Nor is the general rule challenged, which was applied in that decision, to the effect that no implied liability can arise against a municipality or other public corporation for benefits received under an express contract, which was within the power of the corporation to make, but which was entered into without observing mandatory legal requirements, specifically regulating the mode in which the power to make the particular contract might be exercised.

The claim of plaintiff is that the doctrine last stated has no application where the corporation is acting in its private or proprietary capacity. Plaintiff says that when a municipal corporation engages in an enterprise within the scope of its granted powers, which might be, and frequently is, conducted by a private citizen or a private corporation, it becomes liable for property or benefits received from another upon implied contract, precisely in the same manner and to the same extent as a private individual or a private corporation, and this irrespective of express limitations upon its power to create the same liability by express contract; that from the obligation to do justice, which rests equally upon all persons, whether natural or artificial, the law in such cases implies a promise to pay for services rendered to it by another and accepted by the municipality, even where the charter or enabling act of the corporation

prohibits it from incurring liability for such services, except in a specified mode.

While the statement of plaintiff's contentions appears to carry its own refutation, yet the great earnestness with which it was pressed upon us, and the persuasive quality of the forceful and able argument employed by counsel in presenting it, calls for a serious and careful examination of the authorities touching upon the question raised by those contentions.

13. The construction, operation and maintenance of waterworks, gas works or electric lighting plants by a city for the benefit or convenience of its inhabitants, constitutes the exercise of private and proprietary powers: *Esberg Cigar Co.* v. *Portland,* 34 Or. 282 (55 Pac. 961, 75 Am. St. Rep. 651, 43 L. R. A. 445), where nearly all of the more important decisions are cited; *Tone* v. *Tillamook City,* 58 Or. 382 (114 Pac. 938); *Pacific Paper Co.* v. *Portland,* 68 Or. 120 (135 Pac. 871); *Coleman* v. *La Grande,* 73 Or. 521 (144 Pac. 468).

In *Esberg Cigar Co.* v. *Portland, supra,* the court quoted with approval from the case of *Western Saving Fund Society* v. *City of Philadelphia,* 31 Pa. 183 (72 Am. Dec. 730), as follows:

" 'The supply of gas light is no more a duty of sovereignty than the supply of water. Both these objects may be accomplished through the agency of individuals or private corporations, and in very many instances they are accomplished by those means. If this power is granted to a borough or a city, it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good. The whole investment is the private property of the city, as much so as the lands and houses belonging to it. Blending the two powers in one grant does not destroy the clear and well-settled

distinction, and the process of separation is not rendered impossible by the confusion. In separating them, regard must be had to the object of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political, or municipal character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation *quoad hoc* is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred.' "

14. The acts performed, and the duties discharged, by an irrigation district, in constructing an irrigation works for supplying water for irrigation to the land owners of the district, so closely resemble the powers exerted by a city in providing a water system, that it necessarily follows that an irrigation district, in constructing its irrigation system, is exercising a private or proprietary power. In doing so, however, it does not lose "its distinctive municipal character." *Lehigh Water Company's Appeal,* 102 Pa. St. 515, 528. Its acts and duties are public, at least in the sense that they are performed by public officers for the benefit of that portion of the public within its limits.

15. An irrigation district, in common with other municipal corporations, derives all of its power, of whatever character, from the statute under, or by which, it is created. The Supreme Court of the United States, commenting upon the nature of an irrigation district organized under the Wright Act of California, said:

"It is created for a public purpose, and it rests in the discretion of the legislature when to create it, and with what powers to endow it." *Fallbrook Irr.*

*Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56).

16. Like other public corporations, the governing act of an irrigation district is a public statute, and everyone dealing with the corporation, is charged with notice of the extent of its powers and the legislative limitations and restrictions upon the exercise thereof. It follows that the principle that a municipal corporation has no powers, either governmental or proprietary, except those granted to it by the legislature, either expressly or by clear implication, applies with full force to irrigation districts: *Stimson* v. *Alessandro Irr. Dist.,* 135 Cal. 389 (67 Pac. 496). As was said by Mr. Chief Justice Marshall in a great leading case—

"The act of incorporation is to them an enabling act; it gives them all the power they possess; it enables them to contract, and when it prescribes to them a mode of contracting, they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated." *Head & Amory* v. *Providence Ins. Co.,* 2 Cranch (U. S.), 127 (2 L. Ed. 229).

The courts, with great frequency, have been called upon to consider the question of the implied liability of municipal or public corporations for benefits received. The cases in which the question has arisen are so numerous that it is impracticable to cite them in an opinion. They are nearly all collected and classified under pertinent headnotes to the following selected cases: 27 L. R. A. (N. S.) 1117, 1125; 39 L. R. A. (N. S.) 43; 41 L. R. A. (N. S.) 473; 46 L. R. A. (N. S.) 921; L. R. A. 1915A, 990, 1023.

In determining whether a claim for services or materials furnished may be enforced against a municipal corporation on the ground of implied liability,

the cases gathered in the foregoing notes, with but few exceptions, attach no importance to the distinction between the governmental and proprietary powers of a municipal corporation. Those cases include the decisions cited by plaintiff.

Proprietary powers granted to a municipal corporation by an enabling act are interpreted and construed by the same rules that are applied by the courts in determining the meaning and effect of a like grant of political or governmental power, and with identically the same result. In either case, when the mode of the exercise of the power is prescribed, and the same is a condition precedent to the exercise of the particular power, the mode becomes the measure of the power, and any essential deviation therefrom renders the act void and ineffectual. "Aside from the mode designated, there is a want of all power on the subject." *Zottman* v. *San Francisco,* 20 Cal. 96 (81 Am. Dec. 96).

17. A grant of power, whether private or public in its nature, the exercise of which is restricted and limited to a specified mode, is uniformly construed by the courts to exclude the exercise of the power in any other manner, and to inhibit the municipality from any exercise of the power except as provided by the statute. The position thus taken by the courts leads to the further conclusion that the law will not sanction a claim founded upon conduct which it has prohibited, and accordingly, it is held that the municipality is not liable either on the theory of ratification, estoppel or implied contract, where benefits have been received by the corporation upon a contract entered into or executed in defiance of the restrictions of the statute: McQuillin on Municipal Corporations, § 1181; *Brady* v. *Mayor, etc.,* 16 How. Pr. (N. Y.) 432;

*Zottman* v. *San Francisco, supra; Burril* v. *Boston,* 2 Cliff. 590, 596 (Fed. Cas. No. 2198); *Astoria* v. *American La France Fire Engine Co.,* 225 Fed. 21 (139 C. C. A. 80); *McCracken* v. *San Francisco,* 16 Cal. 591; *Philadelphia Co.* v. *Pittsburg,* 253 Pa. 147 (97 Atl. 1083); *Peterson* v. *Mayor, etc.,* 17 N. Y. 449, 454; *Paul* v. *City of Seattle,* 40 Wash. 294 (82 Pac. 601); *Niles Water Works* v. *Niles,* 59 Mich. 311 (26 N. W. 525); *Atlantic City Water Works Co.* v. *Reed,* 50 N. J. Law, 665 (15 Atl. 10); *Louisville* v. *Parsons,* 150 Ky. 420 (150 S. W. 498); Beach on Public Corporations, § 542.

Beach on Public Corporations, discussing powers of municipal corporations, the exercise of which are restricted to a specified mode by legislative enactment, says:

"The powers of a municipal corporation, whether regarded as political or governmental, or those of a mere private corporation, can be exercised only in conformity with the provisions of its charter. The legislature can impose such restrictions as it thinks proper * * . All contracts made by a municipal corporation must conform to the mode prescribed in its charter for making contracts. The provisions of a statute authorizing an act by a municipal corporation must be strictly followed." Section 542.

In the case of *City of Astoria* v. *American La France Fire Engine Co., supra,* Judge RUDKIN, speaking for the court, said:

"Nor is there any material distinction in this connection between the powers of a municipal corporation when acting in its political and governmental capacity and when acting with reference to its private property as claimed by the defendant in error. The city charter prescribed the mode in which the power to provide engines and other apparatus for the department should be exercised, and that mode must be fol-

lowed whether the power be deemed governmental or proprietary. * * There is no merit in the claim that the city is estopped. To so hold would, in a large measure, abrogate the city charter. If the contract was void when made, it is still void unless ratified by competent authority, and there has been no such ratification.''

Mr. Chief Justice FIELD, in the case of *McCracken* v. *San Francisco*, 16 Cal. 591, 621, disposed of the question here under consideration, in the following language:

''The distinction taken between the powers of a municipal corporation, when acting in its political and governmental character, and when acting with reference to its private property, has no application to the questions involved in the case at bar. Its powers, whether regarded as political or governmental, or those of a mere private corporation, could be exercised only in conformity with the provisions of the charter. The legislature could impose such restrictions as it thought proper; and it saw proper to require the formalities of legislation for the disposition of the city property, as it did for the imposition of taxes, the regulation of the Fire Department, and matters connected with the general welfare of the city.''

In the case of *Philadelphia Co.* v. *Pittsburg, supra,* growing out of a contract between the company and the city for the supplying of gas for a municipal hospital, which contract was not entered into in accordance with a statute requiring bids, the court said:

''Section 11 provides, *inter alia,* as follows:

''All contracts relating to city affairs shall be let to the lowest responsible bidder, after reasonable notice.' * *

''We have uniformly held in numerous decisions, and it may now be regarded as a general rule in this state, that where the charter act of a city pre-

scribes the method or formal mode of making municipal contracts, it must be observed, and if not executed in conformity therewith a contract is not enforceable against the municipality. We have held that such requirements in the organic law of a city are mandatory, and that liability on a municipal contract can only be imposed by a compliance with the method prescribed by statute. See *Addie* v. *Pittsburgh,* 85 Penn. 379; *Hepburn* v. *Philadelphia,* 149 Penn. 335 (24 Atl. 279); *McManus* v. *Philadelphia,* 201 Penn. 619 (51 Atl. 320); *Smart* v. *Philadelphia,* 205 Penn. 329 (54 Atl. 1025); *Press Publishing Co.* v. *Pittsburgh,* 207 Penn. 623 (57 Atl. 75), and *Carpenter* v. *Yeadon Boro,* 208 Penn. 396 (57 Atl. 837, 838). In the last cited case it was said (p. 399) : 'The authority of a municipal body to legislate or to contract is conferred by the law-making power of the state, hence it must be exercised in the manner provided in the statute conferring it. A municipal corporation is simply the agent or instrumentality of the state to administer local government and to exercise certain powers and perform certain duties within defined territorial limits in conformity with the method and to the extent delegated in the legislation creating and applicable to the corporation. Its contractual powers are derived from the same source and are circumscribed by the same limitations.'

"In *Hepburn* v. *Philadelphia,* 149 Penn. 335 (24 Atl. 279), Sterrett, J., discussing the provisions of the city charter relating to municipal contracts, says (p. 339) :

"'These clear and explicit requirements of the city's organic law are not merely directory. On principle, as well as authority, they are mandatory. To hold otherwise would defeat the very object that the legislature had in view in thus specifically prescribing the manner in which all contracts relating to city affairs shall be executed and expose the public funds to raids of every conceivable form.' "

The case of *Peterson* v. *Mayor, etc., supra,* related to the construction of a public market in the City of

New York.   Referring to the general doctrine of implied liability, as applied to municipal corporations, the court said:

"In applying it to a particular case, care must be taken that other principles of the law are not violated. For instance, no sort of ratification can make good an act without the scope of the corporate authority. So where the charter or a statute binding upon the corporation, has committed a class of acts to particular officers or agents, other than the general governing body, or where it has prescribed certain formalities as conditions to the performance of any description of corporate business, the proper functionaries must act, and the designated forms must be observed, and generally no act of recognition can supply a defect in these respects."

Counsel for plaintiff cite numerous decisions in which the distinction between the governmental and proprietary powers of municipal corporations was noted and discussed by the courts.   Among the cases cited are several which present in one form or another, the question of how far property or contract rights, acquired by a municipality in the discharge of private functions, may be controlled or affected by federal authority or subsequent legislation.   Most of the cases so cited, however, are like the leading case of *Esberg Cigar Co.* v. *Portland, supra,* and are based upon negligence; in their decisions, the courts recognize the dual powers of municipal corporations, and give effect thereto in determining the liability of the corporation for the negligent acts of its agents or officers.   The point under consideration here is not discussed in any of the cases above referred to, and the decisions therein shed no light upon the question we are considering.

Counsel also cites and relies upon the following decisions: *Audit Co.* v. *Louisville,* 185 Fed. 349 (107 C. C. A. 467) : *Illinois Trust & Savings Bank* v. *Arkansas City,* 76 Fed. 271 (34 L. R. A. 518, 22 C. C. A. 171) ; *Omaha Water Co.* v. *Omaha,* 156 Fed. 922, 928 (85 C. C. A. 54); *Des Moines* v. *Welsbach Street Lighting Co.,* 188 Fed. 907 (110 C. C. A. 540).

The case of *Audit Co.* v. *Louisville, supra,* was an action brought to recover compensation for appraising the property of a system of waterworks, owned and controlled by the city. A contract with the Audit Company for making the appraisement, was entered into by the mayor and a commission under the authority of a resolution of the city council, instead of by an ordinance, as required by the state Constitution. The contract was declared void and recovery denied by the United States District Court. Upon review, the Circuit Court of Appeals in its decision, alluded to the private character of the powers employed by the municipality in respect to its system of waterworks, and said:

"The general rule is well established that, where a city is exercising governmental powers, it is closely limited, and clear authority for each such action must be found in the controlling general or special law of the state, but that, when it is exercising the rights of a proprietor in the management of its property, its council and officers resemble the directors and officers of a private corporation, and, in large degree, the powers of these agents and the responsibility of the city for their acts are governed by the rules applicable to private corporations."

The court, however, did not base its decision upon the foregoing statement, but held that the constitutional restrictions requiring an ordinance as a condition precedent to the exercise of the power of the

council to contract, did not apply, as the employment in fact was in the nature of clerical assistance essential to carrying out an authorized duty. The court also held that the transaction had been formally ratified by the council, and allowed plaintiff to recover.

At the same time that the Audit Company was employed, and by the same resolution, an engineer was hired to examine, and render an opinion upon, the water system from an engineering view. The engineer sued the city in the state courts, where recovery was denied: *City of Louisville* v. *Parsons,* 150 Ky. 420 (150 S. W. 498). In response to the contention we are considering, the Supreme Court of Kentucky said:

"But while it is true that municipal corporations are generally treated as having a dual character, one governmental, the other private, in one capacity exercising governmental functions, and in other performing duties that appertain to the private affairs of the people of the city in their collective capacity as individuals, it is also true that all courts recognize the difficulty of describing, with any degree of accuracy, the line that separates the acts of the city in its governmental and in its private character; and it is not necessary that we should attempt it here. Whatever attitude the city occupied in its dealings with the water company, or in the employment of appellee and others to investigate and report on its condition, the council could not put aside and disregard substantial provisions of the charter from which the city derives all its authority to act in any manner or in any capacity, and which control the council in all that it may attempt to do. If the city has a dual character, and if the council in one state of case is dispensing a part of the governmental power vested in the city, and in another state of case performing duties that appertain to the affairs of the city as a private or business corporation, this difference does

108 Or.—4

not have the effect of releasing it from the limitations and directions imposed by the charter, or give it a free hand to act as it pleases when its acts may happen to fall within the scope of what is called the private or business affairs of the city. * * The limitations and directions of the charter should be and are equally as binding on the city and its council when it acts in one capacity as in the other. What it directs the council to do in a certain manner must be done in that manner."

*Illinois Trust & Savings Bank* v. *Arkansas City, supra,* was a suit brought upon a claim for rental of water works constructed by a corporation, and accepted and used by the city. One defense interposed by the city, was that the ordinance authorizing the contract was not legally adopted. Mr. Justice Sanborn, in the course of his opinion, said:

"The legislature granted to the city full power and authority to contract for the construction of these waterworks, and it nowhere prescribed the mode by which the city should authorize or make the con-tract."

In view of that statement, the case is without value as an authority upon the question under discussion.

*Omaha Water Co.* v. *Omaha, supra,* was an action against the city for rent of water hydrants. The refusal of the city to pay the claim of plaintiff was based upon alleged violation of the contract of the water company. No question of the power of the city to make the contract or of violation of charter or statutory restrictions upon that power, was involved. While the fact that the city acted in a proprietary capacity in respect to the subject of the litigation, was mentioned in the opinion, it did not influence the decision.

*Des Moines* v. *Welsbach Street Lighting Co., supra,* was an action to recover the contract price of lighting materials, furnished the city for its street lighting system. The action was resisted on the ground that the contract was invalid, for the reason that it was entered into without first advertising for bids, in compliance with charter provisions (probably directory). This may be said to be the only decision which appears to support plaintiff's contention. The court said:

"A business contract, which is within the scope of the powers of the city to make but illegal because entered into in an irregular manner, when fully executed by one party and the city has accepted and received the full benefit of the contract and cannot restore what it has received, is enforceable, the city being estopped to assert the irregular execution when the ends of justice would thereby be defeated."

The court cited cases from Illinois and Nebraska, two of the very few jurisdictions, where the rule of implied liability which prevails as to private corporations, is enforced against municipal corporations in whatever capacity they are acting and in spite of express restrictions upon their power to contract. The court cited only one case in which the distinction between proprietary and governmental powers, was mentioned, and in that case, the decision was not rested upon the distinction: *Bell* v. *Kirkland,* 102 Minn. 213 (113 N. W. 271, 120 Am. St. Rep. 621, 13 L. R. A. (N. S.) 793).

Plaintiff relies heavily on the case of *Tone* v. *Tillamook City,* 58 Or. 382 (114 Pac. 938). The important differences between that case and the instant case, were clearly pointed out by Mr. Justice BROWN in our former opinion. While nothing need be added to what was there stated, Dillon on Munici-

pal Corporations (5 ed.), § 793, may be cited with profit where the author, citing numerous authorities, says:

"Thus it is obvious that an implied promise cannot be raised against a corporation, where by its charter it can only contract in a prescribed way, *except it be a promise for money received or property appropriated under the contract.*"

It is clear that plaintiff's contention finds no substantial support in the authorities. Our own decisions are in harmony with those of the great majority of jurisdictions.

18. It is thoroughly established that the plenary authority of the legislature to effectually restrict and limit the exercise of municipal power, extends to all municipal powers granted by it, whether public or government, proprietary or private.

The courts declare with great unanimity, that the element of hardship in cases such as this, cannot be permitted to abrogate or annul positive statutory restrictions upon the powers of public officers. As a guide to the determination of cases where statutory restrictions upon the power to contract have been ignored, and liability of the municipal corporation is sought to be enforced upon the grounds of implied contract, estoppel or ratification, an able text-writer prescribes the following formula:

" * * the question will generally be best determined by ascertaining whether the particular case at bar is of such a nature that a decision in favor of the contracting party will invalidate the precautions imposed by the legislature. If so, the restriction should be enforced; if, on the other hand, the case is such that a decision in favor of the plaintiff will not affect the general policy of the charter or other legislation as evidenced by the restrictions therein

defined, and will also satisfy the natural laws of justice and equity, then the corporation may be safely held liable." Beach on Public Corporations, § 243.

This is not a case where the municipality had a choice of two methods of contracting—one in which it was required to advertise for bids before letting the contract, and the other where it might let the contract without such advertisement or other precedent procedure, nor is it a case where an attempt in good faith was made to pursue the mode prescribed by the statute, which attempt failed because of some irregularity. In such cases an implied liability to pay for services may arise. But where mandatory statutory requirements are entirely ignored, as in the instant case, no recovery is permitted. "The law never implies an obligation to do that which it forbids a party to agree to do." *Brady* v. *The Mayor,* 16 How. Pr. (N. Y.) 432.

Mr. Justice Brown clearly pointed out in the former decision herein, that it was incumbent upon the directors of defendant irrigation district to advertise for bids for the construction of an irrigation works, before they were qualified to exercise either the power to contract for such construction or the power to construct the works under their own superintendence, and that the mode prescribed by the statute was exclusive, mandatory and jurisdictional.

Defendant irrigation district is declared by the statute to be a municipal corporation; it is endowed by the statute with the governmental powers of taxation and eminent domain, as well as with the proprietary power of constructing, operating and maintaining an irrigation system for the advantage and convenience of its constituents; its officers are public

officers, charged with public duties: *Fallbrook Irr.
Dist.* v. *Bradley, supra; Re Madera Irr. Dist. Bonds,*
92 Cal. 296 (28 Pac. 272, 675, 27 Am. St. Rep. 106,
14 L. R. A. 755); *People* v. *Selma Irr. Dist.,* 98 Cal.
206 (32 Pac. 1047). An implied obligation against
the irrigation district cannot be based on the acts
of such officers, which are contrary to duty or con-
trary to law.

To allow plaintiff to recover in this case would set
at naught express mandatory provisions of the stat-
ute, the observance of which were vitally essential
to the authority of defendant to· incur the liability
sought to be enforced. As stated in the above for-
mula, such a decision would "invalidate the precau-
tions imposed by the legislature."

It is not intended by this or the former decision
herein, to determine the rights or liabilities of the
parties in respect to the seizure and use by defend-
ant, of the machinery, tools, equipment and supplies
of plaintiff, which it was alleged in the amended
complaint was threatened, and in answer and reply
as having taken place subsequent to the commence-
ment of this suit.

The plea of plaintiff that the aforesaid appropria-
tion and use of its property by defendant estopped
the latter from asserting the invalidity of the con-
tract in suit, was made for the first time in plaintiff's
reply. It could not be made in the complaint, for
the reason that the property was not taken or used
by defendant until after the commencement of this
suit. As previously shown herein, plaintiff's claim
of estoppel is untenable.

The absence from plaintiff's complaint of any alle-
gation of appropriation, detention or use of its
property by defendant, or of the value or description

of such property or of damages for its detention, renders the complaint wholly insufficient upon that aspect of the case, and furnishes no basis upon which a court might award the ordinary legal remedy of a return of the property and damages for its detention and use, even though it were otherwise proper to award that relief in this proceeding

We adhere to our former decision, and confirm the same.        FORMER OPINION SUSTAINED.

BURNETT, J., not sitting.